HOT SPRINGS ELECTRIC LIGHT COMPANY *v.* HOT SPRINGS.

Opinion delivered March 22, 1902.

CONSTITUTIONAL LAW—IMPAIRMENT OF OBLIGATION OF CONTRACT.— Where a city council granted to an electric light company a franchise to erect and maintain its poles in the streets for a period of twenty years, and the company, relying upon said ordinance, invested large sums of money in the erection of its plant, poles and wires, and, for an agreed consideration, contracted with the council to light the streets of the city for a period of ten years, the grant, when accepted, became a contract whose obligation the city could not impair by requiring the company to pay during the life of such franchise a rental charge for the use of the ground occupied by the poles.

Appeal from Garland Circuit Court.

ALEXANDER M. DUFFIE, Judge.

Reversed.

### STATEMENT BY THE COURT.

On the 13th day of August, 1887, the city council of Hot Springs passed an ordinance granting to the Hot Springs Electric Light Company the right to erect poles in the streets of said city, the first section of which ordinance is as follows: "That the Hot Springs Electric Light Company shall be, and is hereby, authorized and empowered to erect and raise poles and posts and run wires upon, over and across all the streets, avenues, alleys and public places, and to maintain an electric light plant in the city of Hot Springs for the term of twenty years after the 10th day of August, 1887." Under this ordinance the Hot Springs Electric Light Company built an electric light plant for the purpose of lighting the city, placed poles in the streets, and strung wires over the poles, at an expense, altogether, of many thousand dollars. Afterwards, in January, 1894, the city of Hot Springs entered into a contract with the Electric Light Company by which the company agreed to light the streets of the city by furnishing and keeping burning during every night a certain number of arc lights, of not less than 1,600 candle power; the lights to be located at points designated

by the city council; the company agreeing to forfeit and pay to the city $5 per day "for each light it failed to furnish for each day after sixty days from the date of the contract." This contract was to be in force for the term of ten years from 1st day of January, 1894. Under the ordinance and contract above mentioned, the Electric Light Company had, by means of the' plant, poles and wires which it erected in pursuance of the ordinance, furnished light to the city and its inhabitants.

Afterwards, in 1896, and while the electric light plant was in full operation, the city council passed another ordinance, requiring every person, firm or corporation that now has or may hereafter erect poles upon any of the streets or alleys of the city of Hot Springs for telegraph, telephone, electric light, street car, or other purposes, to pay the city annually therefor the sum of 50 cents for each and every pole so erected and maintained.

The city afterwards brought this action to recover of the Electric Light Company the sum of $171.25 alleged to be due for poles by virtue of the ordinance last mentioned. The company filed an answer denying its liability on the ground that its poles had been erected several years before the passage of the ordinance requiring the payment of 50 cents per pole, under a prior ordinance of the city, which it alleged the city could not change without consent of the defendant.

On the trial in the circuit court the court made the following declaration of law: "The court holds that the charge of 50 cents per year is in the nature of a rental charge for the use of the ground occupied by such poles, that there is nothing in the contract or ordinance exempting the defendant from a reasonable rental charge, and that said charge is *prima facie* reasonable." And the court thereupon gave judgment in favor of the city, and the company appealed.

*G. G. Latta* and *Rose, Hemingway & Rose,* for appellant.

The amount levied cannot be collected as a tax. 30 Ark 435; 54 Ark. 509. The taxation of the poles is purely for revenue, and is not permissible. 34 Ark. 603; 43 Ark. 82. The ordinance, when acted on by appellant, became a contract, and measured the right of the parties. 152 U. S. 704; 128 *id.* 454; 1 Dill. Mun. Corp. §§ 450, 454; 4 Wheat, 518. No rent was collectible. 40 La. Ann. 41; S. C. 3 So. 533; 9 Wall. 50; 86 Mo. 67; 3 Gray, 339;

65 Fed. 68; 166 U. S. 388; 64 Fed. 153; 24 Ark. 96. There being no evidence to show the value of the rents, none could be recovered in any view of the case. 7 Ark. 475; 8 *id.* 416; 21 *id.* 69; 7 *id.* 435; 56 *id.* 382.

*A. Curl* and *H. A. Morrison,* for appellee.

The council had power to pass the ordinance in question 148 U. S. 92.

Riddick, J., (after stating the facts.) This is an action by the city of Hot Springs against the Hot Springs Electric Light Company to recover a sum of money which the city claims of it for the use and occupation of certain portions of the public streets upon which the company has erected its poles for electric light purposes. An ordinance of the city requires that each person, company or corporation erecting and maintaining any pole in the streets of the city for electric light, telephone, or certain other purposes shall pay to the city 50 cents per annum for each pole so erected and maintained. We can agree with counsel for the city that it had the right to pass an ordinance of this kind requiring persons and corporations erecting poles in the streets for purposes mentioned in the ordinance to pay for that privilege, but it does not follow that the city can in that way affect rights already vested under valid contracts. Now, the ordinance imposing the charge of 50 cents a pole was passed in 1896, but the poles of the defendant company were all erected prior to that date under an ordinance of 1887, giving the company the right to maintain an electric light plant and to erect poles along the streets and avenues, and to string wires thereon, for the purpose of lighting the city, for and during a period of twenty years. This grant by the city council, having been accepted and acted upon by the Electric Light Company, became, in effect, a contract between the city and the company, which cannot be abrogated without the consent of the company. Under this grant of the right to use the streets of the city for the erection of its poles, the company not only invested large sums of money in the erection of plant, poles and wires, but, relying on that ordinance, it has, for an agreed consideration, contracted with the city council to light the streets of the city for a period of ten years by furnishing lights at points in the city designated by the city council, and has agreed that upon a failure to furnish such lights it will forfeit and pay to the city $5 per day for each light it fails

to furnish. All this was done before the passage of the ordinance imposing on the company a charge of 50 cents per year for each pole placed in the street.

Now, a grant which has been accepted and acted upon by the grantee is a contract, within the meaning of the constitution of the United States, which forbids laws impairing the obligation of contracts. When, therefore, rights and franchises lawfully granted to either a person or corporation have been duly accepted, and valuable improvements have been made on the faith of such grant, it becomes, in effect, a contract, which cannot be impaired either by a law of the state or by an ordinance of a municipality. The rights and franchises granted can then neither be revoked, nor can they be diminished in value by the imposition of additional burdens upon their use and enjoyment. *Fletcher* v. *Peck,* 6 Cranch (U. S.), 87; *Dartmouth College v. Woodward,* 4 Wheat. (U. S.), 518; *New Orleans Gas Company* v. *Louisiana Light Co.,* 115 U. S. 650; *New Orleans Water Works Co.* v. *Rivers,* 115 U. S. 674; *Sioux City St. Ry. Co.* v. *Sioux City,* 138 U. S. 98; *St. Louis* v. *Western Union Tel. Co.* 148 U. S. 92; *Burlington* v. *Burlington St. Ry. Co.,* 49 Iowa, 144; 2 Beach, Contracts, § 1205; 3 Parsons on Contracts (8th Ed.), page 479; 15 Am. & Eng. Enc. Law (2d Ed.), 1049.

Counsel for the city do not, of course, deny the rule above stated, but they contend that the grant of the right to use the streets must be understood as being subject to the right of the city to require a reasonable compensation therefor. This grant to appellant of the right to place its poles in the streets, counsel say, only placed the company in the position it would have occupied had it proceeded under some valid statute to condemn the property for such purposes. This illustration is pertinent, but it does not seem to support the position of counsel. If the company had proceeded under a statute to condemn the property, it would have been compelled to make compensation before taking the property. But this grant on the part of the city put the company in the position it would have occupied had it condemned the property under a valid law and paid the compensation required.

After having paid for the property in a proceeding to condemn under the power of eminent domain, supposing that it was authorized to proceed in this way, it could not have been subjected to another demand of the city for the use and occupation of the

property for which it had already paid.    If a railroad locates its right of way through a farm, the owner may demand compensation therefor, or, if he chooses to do so, he may grant the right of way to the company free of charge.    But after he has made the grant, and the company has built the road, he cannot change the terms of his contract by requiring the company to pay him for the use and occupation of the land the right of way over which he has already granted.    But cities are as much bound by their lawful contracts as private persons, and it follows from the same reasons that, the city having granted to this company the privilege of erecting and maintaining its poles along the city streets for a period of twenty years, and the grant having been accepted by the company, and the company having expended large sums of money and made valuable improvements on the faith of such grant, the city council cannot now impose additional burdens, and, in effect, change the contract, without the consent of the company.    The terms upon which this grant was made having been fully complied with by the company, the city is estopped by its own grant from demanding additional compensation for that which it has already granted.    It follows that, in our opinion, the circuit court erred in holding that the city had the right to demand "a reasonable rental charge for the use of the ground occupied by such poles."

We know, of course, that in this state, under power reserved in the constitution, the legislature may, within certain limits, alter, revoke or amend the charter of corporations, but no question of that kind arises here.    We also know that a city cannot contract away its police power, and that the city has the right to inspect the poles and wires of this company to see that they are kept in safe condition, and it is possible that the city may, notwithstanding this contract, have the right to impose the cost of such inspection upon the company.    But we do not decide that question, for the agreed statement of facts upon which the case was tried stated that the city had never had an inspector, or made any official inspection of electric light poles.    Counsel for the city also say in their brief that "this is clearly an action for rent," and the circuit court found that the 50 cents per pole imposed by the ordinance was "in the nature of a rental charge for the use of the ground occupied by the poles."    So, looking at the case as presented by the counsel for the city, it is clear that there is no question of the police powers of the city involved.    So far as the evidence

shows, it is an attempt to charge the company for the privilege of using the streets, which had been previously granted to it, and is, in effect, an effort on the part of the city to change the terms of its contract with the company, and to impose additional burdens on the company without its consent. We are of the opinion that this cannot be done, and our conclusion is that the city made out no case against the defendant.

The judgment of the circuit court is therefore reversed, and the cause remanded for a new trial.