SOUTHWESTERN BELL TELEPHONE COMPANY
and ARKANSAS WESTERN GAS COMPANY
*v.* CITY OF FAYETTEVILLE, Arkansas

80-176                                              609 S.W. 2d 914
Supreme Court of Arkansas
Opinion delivered December 22, 1980.
[Rehearing denied February 2, 1981.]

*Ball & Mourton; D. D. Dupre*, by: *Sandra Brown*; and *Walter R. Niblock*, for appellants.

*James N. McCord*, for appellee.

H. WILLIAM ALLEN, Special Chief Justice. After several years of planning and effort, appellee City of Fayetteville (City) by agreement with the Arkansas State Highway Department acquired sufficient federal funds to proceed with a project to extend and widen North Street in order to straighten the nearby intersection of Arkansas Highways 112 and 16 West. The project required a number of telephone poles and gas meters of appellants Southwestern Bell Telephone Company (SWB) and Arkansas Western Gas Company (AWG) to be relocated from their positions in the existing North Street right-of-way. Some of SWB's poles were relocated within the existing right-of-way and some within the new right-of-way acquired for the project. All of the affected AWG meters were moved to locations within the new right-of-way.

The City brought an action seeking a declaratory judgment that SWB and AWG were liable for the costs of relocating their facilities. To expedite construction SWB and AWG agreed to relocate the facilities, preserving for determination by the courts the issue of whether the City or they are liable for relocation costs. The parties stipulated the facts and filed cross-motions for summary judgment. On February 6, 1980 the Washington County Chancery Court entered a decree declaring SWB and AWG liable for their relocation costs. It is from this decree that SWB and AWG appeal.

All the parties and the chancellor cite and rely upon three previous decisions of the court. They are: *Ark. Stat. Hy. Comsn.* v. *Ark. Pow. and Light Co.*, 231 Ark. 307, 330 S.W. 2d 77 (1960); *Ark. State Hy. Cmsn.* v. *Ark. Pow. and Light Co.*, 235 Ark.

277, 359 S.W. 2d 441 (1962); and *City of Little Rock* v. *Ark. La. Gas Co.*, 261 Ark. 347, 548 S.W. 2d 133 (1977). In each case the utility was awarded its relocation costs.

In the 1960 *AP&L* case we held that when a State Highway Commission project required the removal of power company poles entirely from the right-of-way it occupied in the City of El Dorado, Arkansas, the utility had been ousted from its property right and was entitled to recover its relocation costs from the Commission. The opinion in this case contained the following dicta which is relied upon by appellee here:

> "Hence, if the city or county should change the right-of-way of a public street or road, or widen it, or relocate it, the Company could be required to change its poles and wires without compensation so as not to 'unnecessarily and unreasonably impair or obstruct' the street. But here it is not a question of requiring the Power Company to relocate its poles so as not to unnecessarily or unreasonably impair or obstruct the traffic. The Commission has demanded that the Company remove its facilities entirely from the right-of-way." 359 S.W. 2d 441 at 442.

In the 1962 *AP&L* case the power company's poles were located on right-of-way easements of two streets within the city of North Little Rock, Arkansas. The Commission subsequently engaged in the construction of an interstate highway which crossed these two streets and required the relocation of the affected poles further back on the existing right-of-way easements but outside of the new right-of-way acquired by the project. Because the poles were merely moved from locations on the existing right-of-way to other locations on the same right-of-way the Commission argued that the quoted language from the 1960 case applied and the utilities should bear the cost of removal. However, the Court held that the right-of-way referred to in the quoted portion of the 1960 *AP&L* case was not the existing right-of-way but the new right-of-way. Because the project removed and excluded the poles from the new right-of-way, the court ruled an ouster

had occurred and the Commission was required to reimburse the utility's cost.

At this stage of the development of the cases, it might well have been assumed that the quoted dicta in the 1960 case still had substantial viability and would apply in situations where removal of utility facilities was within a street project's newly created right-of-way. However, in the 1977 case of *City of Little Rock* v. *Ark. La. Gas, supra,* the Court rejected, at least by implication, any prospect of affording a different treatment to relocations of utility facilities depending upon whether the facilities were moved to points inside or outside a new right-of-way. The *Arkla* case dealt with a street improvement project where only the existing right-of-way was involved. The gas company, in the face of certain federal highway commission requirements, chose to remove its gas line from under the pavement or the street and relocate it along the side of the street, still within the existing right-of-way. The federal requirements included a prohibition against cutting the pavement for installing service connections for a period of five years and a restriction on Arkla's use of its manholes to the hours between 8 p.m. and 6 a.m. This court found that the relocation to the side of the street was compelled by the limiting conditions placed on Arkla and that the requirements amounted to an ouster requiring compensation to the utility.

After reviewing these three cases, the chancellor below justified the conclusion that the utilities must bear their own relocation costs on the basis that, unlike the previous cases, there was no showing here:

> ". . . That SWB or AWG had been ousted from easement rights altogether nor have any limiting conditions been placed on either in respect of access to, maintenance of or delivery of service from, their respective lines as relocated."

We do not believe the case here can be distinguished from the *Arkla* case on the basis that in the latter limiting conditions were imposed and that no such conditions were imposed here. In this case the utilities were instructed to move

their facilities outright — an even more drastic action than indirectly requiring their removal by imposing restrictions on access. We cannot affirm the lower court without overruling the *Arkla* case which we decline to do. Even if we were inclined to overrule the *Arkla* case, we could not condone a holding that reimbursement of a utility depends on whether it is directed to remove its facilities inside or outside of a new right-of-way. It is undoubtedly removal itself which causes the utility its primary harm in most cases, rather than the position of the relocation (assuming that the new location is in the near vicinity of the old location). It would be unfair to have a rule which would allow a municipality to gerrymander a new right-of-way in such a manner as to avoid reimbursing a utility.

We recognize the evolution of our decisions has departed to a substantial extent from the dicta of the 1960 *AP&L* case relied upon by appellee. We further recognize that this case and the *Arkla* case depart from the general common law rule that a utility bear its own relocation costs when the changes are required by public necessity. *McQuillin on Municipal Corporations*, Third Ed. (1970) (Rev. Vol.) Vol. 12, Sec. 34, 74a (p. 183). However, the treatise does recognize exceptions to the general rule and that it may be changed by contract or legislation.

It is admitted by appellee that this project was constructed under the federal-aid urban system program and that if reimbursement is permissible under state law, the federal government will pay 70% of the reimbursement costs in issue. Two acts of the United States Congress have made provision for the reimbursement of relocation expenses occasioned in federally funded projects. The first is in the Uniform Relocation Assistance Act, 42 U.S.C. Sec. 4601 *et seq.* This Act provides reimbursement protection for "persons" who have been displaced of property rights as a result of federally funded or federally assisted programs. Appellee argues that utilities are not "persons" entitled to benefit from that Act as there is another federal statute dealing more specifically with utility relocation, the Federal Aids Urban System Act, 23 U.S.C. Sec. 103 *et seq.* Sec. 123a of that Act provides:

"When a state shall pay for the costs of relocation of utility facilities necessitated by the construction of a project on the Federal Aid Primary or Secondary Systems or on the Interstate System, including extensions thereof within urban areas, federal funds may be used to reimburse the state for such costs in the same proportion as federal funds are expended on the project. Federal funds shall not be used to reimburse the state under this section when the payment to the utility violates the law of the state or violates a legal contract between the utility and the state."

There is no contract in this case that would be violated if these utilities are reimbursed, so the only issue here is whether state law would be violated. The only expression of the Arkansas legislature relating to relocation expenses is Ark. Stat. Ann. Sec. 14-1001 (Repl. 1979) and it reflects an intent to encourage the payment of costs of relocation in order to take full advantage of the federal payments provided by 42 U.S.C. 4601 *et seq.* Thus, in the only instance the legislature has spoken, it has reflected a general intent in favor of reimbursing relocation expenses.

We do not hold that in all cases of utility relocation the governmental authority must reimburse the utility for its costs, and we leave exceptions for future determination. Municipalities are not helpless in this regard. Ark. Stat. Ann. Sec. 73-208 grants cities and towns the right to provide for reasonable terms and conditions upon which a public utility may occupy the streets, highways or other public places within the municipality. For example, in this case SWB holds its property right under Ark. Stat. Ann. Sec. 73-1801 but appellee passed an ordinance setting the terms and conditions of SWB's occupancy and pursuant thereto and in lieu of other taxes SWB makes an annual payment of $100,000 to appellee. AWG holds it property right under a franchise granted by appellee for which it pays a percentage of its revenues to appellee. The allocation of utility relocation costs could well be left to more specific legislation or negotiations between municipalities and utilites at the time of new construction or on the renewal of existing franchises.

We deem it unnecessary to discuss SWB's contention that the federal government and not the city was the moving force in the project.

The decision of the chancellor is reversed and remanded for judgment to be entered in favor of the appellants for their costs of relocation.

FOGLEMAN, C.J., not participating.

GEORGE ROSE SMITH and STROUD, JJ., dissent.

JOHN F. STROUD, Justice, dissenting. The majority opinion is a perfect illustration of the exception swallowing up the rule. The opinion indicates that this case cannot be affirmed without overruling one or more of the prior decisions of this court on the subject. In my view, the majority have just overruled all three precedents on the subject. *Ark. State Highway Comm.* v. *Ark. Power & Light Co.*, 231 Ark. 307, 330 S.W. 2d 77 (1959); *Ark. State Highway Comm.* v. *Ark. Power & Light Co.*, 235 Ark. 277, 359 S.W. 2d 441 (1962); and *City of Little Rock* v. *Ark. Louisiana Gas Co.*, 261 Ark. 347, 548 S.W. 2d 133 (1977).

In the first AP&L case in 1959, the comments of this court quoted by the majority were not dicta, as the court was merely stating the general rule before finding that the facts fell within the exception to the rule due to the complete ouster of the utility's facilities from the right-of-way. The general rule was stated as follows:

> But even though the Power Company has the right to maintain its poles on the rights of way, it does not mean that the company could not be compelled to move its facilities so as not to unnecessarily interfere with use of the streets. . . . Hence, if the city or county should change the right of way of a public street or road, or widen it, or relocate it, the Company could be required to change its poles and wires without compensation so as not to 'unnecessarily and unreasonably impair or obstruct' the street.

The basic rule is also set out in 12 McQuillin on

Municipal Corporations 183, § 34.74a (3d ed. rev. 1970):

> The fundamental common-law right applicable to franchises in streets is that the utility company must relocate its facilities in public streets when changes are required by public necessity. Accordingly, it is generally held that the municipality may require a change in the location of pipes or other underground facilities of the grantee of a franchise, where public conveniences or security require it, even at the grantee's own expense . . .

In the second AP&L case decided in 1962, this court reaffirmed and quoted the basic premises previously set forth in the earlier AP&L case. However, as the Highway Commission required the utility to remove its poles from the path of a freeway and replace them with much higher poles, the court found that an ouster of the utility's facilities had occurred, justifying reimbursement of the relocation expense.

The Arkla Gas case in 1977 also found "in effect, an ouster rather than a mere relocation" due to the severe limitation of access to the facilities placed upon the utility by the street improvement project. By this comment the court obviously still acknowleded the general rule that the cost of a "mere relocation" would not be reimbursed to the utility.

In the present case, the City of Fayetteville required the telephone poles and gas meters of appellants to be relocated either within the existing right-of-way or the newly acquired right-of-way adjacent thereto as a part of the street widening project. There was no ouster from the right-of-way as in both AP&L cases, nor an ouster by restriction of access as in the Arkla case. The evidence clearly shows that there was a "mere relocation" with no extenuating circumstances, and as the facts square perfectly with the basic rule acknowledged by all three decisions of this court on the subject, I would apply the rule rather than discard it. For these reasons the finding of the learned Chancellor should be affirmed.

GEORGE ROSE SMITH, J., joins in this dissent.