CITY OF LITTLE ROCK and Arkansas Public Service
Commission *v.* AT&T COMMUNICATIONS
OF THE SOUTHWEST, INC.

93-1251                                         888 S.W.2d 290

Supreme Court of Arkansas
Opinion delivered November 14, 1994
[Rehearing denied December 19, 1994.*]

---

*Special Justice Charles Roscopf joins. Corbin, J., would grant rehearing. Newbern, J., not participating.

618

*Thomas M. Carpenter*, City Att'y, by: *David A. Stewart, William C. Mann III*, and *Anthony W. Black*, for appellant City of Little Rock.

*Paul Ward*, for appellant Arkansas Public Service Commission.

*Wright, Lindsey & Jennings*, by: *N. M. Norton, Jr.* and *Roy F. Cox, Jr.*, for appellee.

TOM GLAZE, Justice. This case was originally decided by the Arkansas Public Service Commission which upheld the validity of a Little Rock ordinance that required AT&T Communications of the Southwest, Inc. to pay certain fees for the privilege of using the City's public streets. The City of Little Rock had adopted the ordinance which granted each provider of interstate and intrastate toll (long distance) telephone services in the City a franchise to use the City's public ways. The ordinance also levied a $.004 per minute charge on all long distance telephone calls that are billed to a city service address. AT&T filed its complaint with the PSC, challenging the validity of the ordinance, and the Commission designated an administrative law judge to hear the complaint.

The law judge issued Order No.17, finding the ordinance valid and dismissing AT&T's complaint. The Commission subsequently adopted Order No. 17 as its own. AT&T appealed from the Commission's decision to the court of appeals and set out the following points for reversal: (1) The ordinance is unlawful as a tax or fee, and in particular, is not authorized by Ark. Code Ann. § 14-200-101 and is barred by Ark. Code Ann. § 23-17-101; (2) alternatively, the ordinance is an arbitrary, capricious and unreasonably discriminatory application of whatever franchise authority the City may possess; and (3) the ordinance is an unreasonable and therefore unconstitutional burden on interstate commerce. The court of appeals ruled in AT&T's favor, reversing the Commission's decision. *AT&T Communications* v. *City of Little Rock*, 44 Ark. App. 30, 866 S.W.2d 414 (1993). Specifically, it agreed with AT&T's first point that the City's ordinance levied an unauthorized tax. The court of appeals found it unnecessary to rule on AT&T's other two points. Little Rock and the PSC petitioned this court to review the case, and we

granted that petition. In doing so, we first consider the court of appeals' decision which invalidated the City ordinance as levy-ing an unauthorized tax.

In reaching its decision, the court of appeals put misplaced reliance upon *City of Marion* v. *Baioni*, 312 Ark. 423, 850 S.W.2d 1 (1993), and other similar cases where this court discussed the distinction between a fee and tax. We initially point out that the fee imposed by the City of Little Rock here against AT&T is called a "franchise" fee, and is wholly different from those fees discussed and dealt with in *Baioni*. By statutory law, a municipality may by ordinance assess and determine a rate/fee for service rendered by any public utility occupying streets (rights-of-way) within the municipality, and such an ordinance is deemed prima facie reasonable. Ark. Code Ann. §§ 14-200-101 — 14-200-104 (1987 and Supp. 1993). In common parlance, such franchise fees are, in form, rental payments for a public utility's use of the municipality's right-of-way, and such fees are reviewed by the PSC. § 14-200-101(b)(1).

Prior to AT&T's divestiture, Little Rock assessed only one municipal franchise fee for the use of its rights-of-way for telephone service and that assessment was imposed only upon local calls. It was then generally believed that the imposition of a municipal franchise fee upon long distance service would violate the Commerce Clause. This practice was continued by Little Rock even after AT&T's divestiture took place about eleven years ago when Southwestern Bell (SWB) and other regional companies received the local lines and property, and AT&T obtained the long-distance part of the telephone network. SWB continued its payments of the Little Rock franchise fees upon the local service. However, AT&T paid no similar fee on its long-distance service even though AT&T obtained access to originating and terminating caller locations within Little Rock over SWB's facilities, a substantial portion of which occupy the City's streets and rights-of-way. It was only after the Supreme Court's decision in *Goldberg* v. *Sweet*, 488 U.S. 252 (1989), that Little Rock enacted the ordinance in issue here, whereby it assessed AT&T (and other companies) four mills on all long distance calls that originated or terminated within the City and were billed to a Little Rock address.

As previously mentioned, the court of appeals relied upon this court's rationale in *Baioni* in holding Little Rock's franchise

fee or assessment is an unlawful tax, but in doing so, the court of appeals completely overlooked the fact that *Baioni* and related cases cited in that decision were not franchise fee cases.

In *Baioni*, the City of Marion charged sewer and water fees to certain developers. There, this court reached its decision by analyzing the evidence in light of the applicable rule in such cases that a governmental levy or fee, in order not to be denominated a tax, must be fair and reasonable and bear a reasonable relationship to the benefits conferred on those receiving the services. *Baioni*, and cases like it, involved fees charged directly to *developers or residents* for the construction or extension of certain services such as for sewer and water, and the general rule that the fees obtained for such purposes must be segregated and used for those purposes only.

The *Baioni* holding is simply inapplicable to situations where cities are statutorily authorized to assess *public utilities franchise fees for the use or occupancy of the cities' rights-of-way*. The court of appeals was wrong in failing to recognize this legal or statutory distinction.

As pointed out above, § 14-200-101(a)(1) empowers Arkansas municipalities to assess utility franchises operating within the municipalities, and telephone companies are not excluded. *See also* Ark. Code Ann. § 23-4-201 (1987); *S.W. Bell Tel. Co.* v. *City of Fayetteville*, 271 Ark. 630, 609 S.W.2d 914 (1980); *Hot Springs Elec. Light Co.* v. *Hot Springs*, 70 Ark. 300, 67 S.W. 762 (1902) (court recognized a municipality had right to enact an ordinance requiring a company to pay a fee for erecting and maintaining poles in the city streets for electric light, telephone or certain other purposes). In the *S.W. Bell Tel. Co.* case, this court pointed out that § 14-200-101 (then Ark. Stat. Ann. § 73-208) granted cities the authority to determine reasonable terms and conditions, which included a franchise payment/fee, for the use of public streets. Significantly, § 14-200-101 was found by the court to apply to a telecommunications utility deriving the right to construct its system under the Telephone Company Act [Ark. Code Ann. § 23-17-101—307 (1987)]. In this respect, AT&T argues that, without exception, the Telephone Company Act allows telephone companies the right to use highways and city streets without charge. It concedes, however, that, over the years, telephone

companies have paid franchise fees on local calls. Of course, if AT&T's construction of the Act were true, municipal fees charged on either local *or* long distance service would be unlawful and undoubtedly would impact greatly on present municipal revenues.

As AT&T concedes by acknowledging the telephone companies' payment of franchise fees during past years, its proposed construction of the Act has not been the one applied by the telephone companies and cities, and, in ascertaining the Act's intent, this court examines the statute historically, as well as the contemporaneous conditions at the time of its enactment, consequences of interpretation, and matters of common knowledge within the limits of this court's jurisdiction. *Mears, County Judge* v. *Ark. State Hospital*, 265 Ark. 844, 581 S.W.2d 339 (1979); *see also Hot Springs Elec. Light Co.*, 709 Ark. 300, 67 S.W. 762. It appears clear that the telephone companies, municipalities and this court have recognized franchise fees over the past years, and only now, does AT&T claim the 1885 Telephone Company Act invalidates such fees. In any event, § 14-200-101 has been enacted since the passage of the 1885 Act, and that later statute, as discussed above, empowers municipalities to impose such fees. For these reasons, we conclude the Little Rock franchise and fee ordinance is authorized by law, and the court of appeals was wrong in holding otherwise.

We next turn to AT&T's second argument that Little Rock's ordinance and franchise fee is an arbitrary, capricious and unreasonable application of the City's franchise authority. In considering this issue, we emphasize that our review is of the PSC's decision, therefore, we are bound by long-settled law governing this court's limited review of PSC administrative rulings. The Commission has broad powers and is vested with wide discretion; that, if the order of the Commission is supported by substantial evidence, is free from fraud and not arbitrary, it is the duty of this court to let it stand even though the court might disagree with the wisdom of the order. And for the Commission's order to be invalid, the Commission's action must lack rational basis. *In Re Sugarloaf Mining Co.*, 310 Ark. 772, 840 S.W.2d 172 (1992); *Harding Glass Company* v. *Ark. Public Service Commission*, 229 Ark. 153, 313 S.W.2d 812 (1958).

Here, Little Rock, by ordinance, assessed AT&T and

other like utilities franchise fees based upon the use of Little Rock streets. These utilities obtained enormous gross revenues from handling long distance calls within the city. The PSC agreed with Little Rock that, given the inherent nature of communication services provided by telephone utilities, the only rational basis for assessing fees is in measuring *time in units*. Under Arkansas law, Little Rock's ordinance, using time-unit methodology in establishing AT&T's fee, is by law presumptively reasonable. Ark. Code Ann. § 14-200-101(a)(1) (1987). AT&T had the burden to show the Little Rock fee ordinance is unreasonable, but even its own expert, Dr. Charles Venus, testified he did not think "anyone knows whether the relationship in this particular case is reasonable or unreasonable." In sum, Little Rock's imposition of a fee on a per-minute basis for the effective use of the city's rights-of-way has not been shown to be unreasonable or without a rational basis.

Although this court on review must accept the PSC's ruling unless it is arbitrary or capricious, AT&T (and a dissenting opinion) would force the PSC to require franchise fees based upon the *number of miles* of facilities AT&T (and like utilities) had located within the city's rights-of-way. No authority is cited which requires such mileage methodology or formula, and we know of none. In fact, the Supreme Court has cautioned against such rigid formulas when dealing with telecommunication businesses which involve "the more intangible movement of electronic impulses through computerized networks." *Goldberg* v. *Sweet*, 488 U.S. 252, 264 (1989). While other businesses may be more reasonably assessed on the basis of number of units owned or number of miles traveled, the *Goldberg* Court opined that a formula based upon "mileage or some other geographic division of individual telephone calls would produce insurmountable administrative and technological barriers" because "the exact path of thousands of electronic signals can neither be traced nor recorded." *Id.* at 264-265, 266.

Finally, it is significant to point out that the time-use methodology selected by Little Rock and approved by the PSC results in the equality of treatment of all interexchange carriers. On the other hand, if Little Rock and the PSC had chosen the mileage right-of-way formula suggested by AT&T, disparity between telephone companies could be argued as AT&T does

now in this appeal. The PSC is not required to mandate that the City use a mileage methodology in establishing fee charges for telecommunications business, especially when that formula is arguably discriminatory in nature.[1]

In light of the Supreme Court's reasoning in *Goldberg* v. *Sweet*, 488 U.S. 252 (1989), and the PSC's finding that AT&T failed to show the City's method of assessment was unreasonable, this court is not in a position to determine otherwise. As newer technologies, including cellular communications, continue to evolve, this court must abandon antiquated and simplistic formulas as that suggested by AT&T. Because there is sufficient evidence to support the PSC's finding that the assessment based on $0.004 per minute of use is reasonable, we affirm that ruling.

Finally, we consider AT&T's argument that the fee or charge under the Little Rock ordinance constitutes an unreasonable burden in violation of the Commerce Clause. AT&T cites *Goldberg* v. *Sweet*, wherein the Supreme Court upheld the validity of an Illinois Telecommunications Excise Act, finding the Act withstood scrutiny under the Commerce Clause. In so holding, the Supreme Court held that the Illinois Act satisfied the four-pronged test set forth in *Complete Auto Transit, Inc.* v. *Brady*, 430 U.S. 274, which required that the tax (1) must be applied to an activity with a substantial nexus with the taxing state, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services provided by the state.

---

[1]Interestingly, the fee charged AT&T for its per-minute usage of Little Rock's rights-of-way amounts to a lower percentage of its revenue than the percentage of revenue paid by the other following (except for one) utilities:

| COMPANY | PERCENTAGE |
|---|---|
| ALLTEL | 1.69 |
| AP&L | 5.20 |
| ARKLA | 4.42 |
| ARKLA (IN LITTLE ROCK) | 5.20 |
| AT&T (IN LITTLE ROCK) | 1.92 |
| LITTLE ROCK WATER WORKS | 5.00 |
| SOUTHWEST ARK. ELEC. COOP. CORP. | 3.67 |
| SOUTHWESTERN BELL TELEPHONE COMPANY | 2.43 |
| SOUTHWESTERN BELL TELEPHONE COMPANY (IN LITTLE ROCK) | 7.32 |
| STORER CABLE (IN LITTLE ROCK) | 3.00 |

Here, AT&T does not question the first three test factors set out above, but it urges Little Rock's ordinance fails the fourth criterion because the charge assessed by ordinance does not fairly relate to the services provided by Little Rock. AT&T specifically argues that it already pays a privilege license and sales taxes for general city services and the only added benefit the City purports to confer by its ordinance is a franchise or license to occupy Little Rock's public streets. To state the obvious, all businesses do not pay the same amounts in sales taxes. It is equally apparent that only a few businesses have the privilege to occupy public rights-of-way. The proof showed that AT&T paid significantly less than the percentage of gross revenues paid by the electric, gas and water utilities using Little Rock public rights-of-way. In addition, we note that as a result of its use of these rights-of-way, AT&T has derived substantial benefits via gross receipts from its providing a commercial, profit-making, public utility service to the citizens of Little Rock. AT&T's conclusory disagreement concerning its right of occupancy and contention that the franchise fee is excessive in comparison to the benefits afforded it by Little Rock is simply unpersuasive. Because AT&T failed to show the City's franchise fee is an unreasonable burden on interstate commerce, we affirm the PSC's ruling.

For the reasons given above, we reverse the court of appeals' decision that the Little Rock ordinance levied an unauthorized tax, and affirm the PSC decision in all respects.

DUDLEY and CORBIN, JJ., dissent; SPECIAL JUSTICE CHARLES ROSCOPF joins this opinion; NEWBERN, J., not participating.

ROBERT H. DUDLEY, Justice, dissenting. AT&T Communications of the Southwest, Inc. filed a complaint with the Arkansas Public Service Commission challenging a levy by the City of Little Rock of $.004 per minute on all long distance calls billed by interexchange long distance telephone companies to a service address within the City. The charge, which is based entirely on the number of minutes of telephone use, is billed to a telephone service address, and the charge may be passed on to the phone user.

An Administrative Law Judge for the Public Service Commission heard the complaint. In summary, he ruled that the levy

was a validly enacted franchise fee, and not a tax; that the ordinance does not impose an unreasonable burden on interstate commerce; that the amount of the fee is reasonable; and that a rational basis exists for the differentiation between the cellular telephone companies and interexchange telephone carriers.

AT&T filed a petition for rehearing with the Administrative Law Judge. The petition was denied. AT&T filed a petition for rehearing with the full Public Service Commission, and it upheld the Administrative Law Judge's ruling. AT&T then appealed to the court of appeals and, for reversal, relied on three points: (1) (a) the City lacked authority to enact the ordinance, and (b) the levy was an unauthorized tax; (2) the amount of the fee is arbitrary, capricious, and discriminatory as applied to AT&T; and (3) the ordinance is an unconstitutional burden on interstate commerce. The court of appeals held that the levy constituted a tax, and, because it had not been adopted at an election by the qualified electors of the city, it was invalid. *AT&T Communications* v. *City of Little Rock*, 44 Ark. App. 30, 866 S.W.2d 414 (1993). The court of appeals reversed the ruling of the Public Service Commission, but in so doing did not reach the issues of whether the levy is arbitrary, capricious, or discriminatory, or whether it constitutes an unconstitutional burden on interstate commerce.

The City of Little Rock and the Arkansas Public Service Commission both petitioned this court for review of the decision of the court of appeals. *See* Ark. Sup. Ct. R. 1-2(f). Thus, the case is in the supreme court on certiorari to the court of appeals to review its reversal of the decision of the Arkansas Public Service Commission.

## I.

Procedurally, on a grant of certiorari to the court of appeals, we will consider the case as if it were initially appealed to this court. *Maloy* v. *Stuttgart Memorial Hosp.*, 316 Ark. 447, 872 S.W.2d 401 (1994). On certiorari we can affirm the trial court in part and reverse the court of appeals in part. *See, e.g., Henry* v. *Kennedy*, 273 Ark. 383, 619 S.W.2d 632 (1981); *Hair* v. *Hair*, 272 Ark. 80, 613 S.W.2d 376 (1981). We can address issues argued to, but not decided by, the court of appeals. *See Oliver* v. *State*, 286 Ark. 198, 691 S.W.2d 842 (1985).

The Public Service Commission, in its brief to this court, discusses the standard of review of the Administrative Law Judge's findings of fact, but that is not a real issue in this appeal. There is no dispute about whether the Administrative Law Judge was clearly in error in determining any fact. Some of the facts were developed by testimony of interested witnesses, and some by introduction of documents such as city ordinances, but the vast majority of the facts were stipulated by the parties. The real issues are questions of law, and, if the Administrative Law Judge or the Public Service Commission is wrong on a question of law, we will reverse.

The majority opinion affirms the Public Service Commission, and reverses the court of appeals' holding that the levy is a tax that is invalid because it was not adopted at an election by the qualified electors of the City. *See* Ark. Code Ann. § 26-73-103 (1987).

## II.

Section 14-200-101 of the Arkansas Code Annotated of 1987, the controlling statute in this case, provides that a city can "determine" the "terms and conditions" for public utilities' use of city streets and rights-of-way. The statute contains three provisions that are significant to the outcome of this case.

## A.

The first of the significant provisions is contained in subsection (a)(1), which provides that a city can determine the "terms" upon which a public utility may be permitted "to occupy the streets, highways, or other public places within the municipality." The word "terms" in such a statute means the "time and amounts of payment." *Nakdimen* v. *Ft. Smith & Van Buren Bridge Dist.*, 115 Ark. 194, 208, 172 S.W. 272, 276 (1914). In *Southwestern Bell Telephone Co.* v. *City of Fayetteville*, 271 Ark. 630, 609 S.W.2d 914 (1980), in dictum, we said section 14-200-101 granted authority to cities to determine reasonable terms for the use by public utilities of public streets. *Id.* at 635, 609 S.W.2d at 918. Thus, section 14-200-101 (a)(1) is authority for a municipality to charge a public utility for the use of its streets and rights-of-way.

## B.

The second significant provision is also contained in subsection (a) and provides that a city can enact the charge "by ordinance or resolution." Thus, it is not necessary for the qualified electors to approve the terms of an ordinance setting the amount of the charge for the use of a city's streets and rights-of-way by a public utility. Because the statute authorizes the charge to be adopted "by ordinance or resolution," it logically follows that the charge is not invalid because there was no election by the qualified electors of a city.

The court of appeals held that the levy is a tax and that the tax is invalid because there was no election. That holding is based upon our case of *City of Marion* v. *Baioni*, 312 Ark. 423, 850 S.W.2d 1 (1993). There we discussed the distinctions between a fee and a tax in situations in which there is no applicable statute. The issue was whether a charge to connect onto a city's water and sewer system was a fee or a tax. Since there was no statute authorizing the charge, we had to look at all of the factors involved to determine the issue. To the contrary, in this case, there is a statute that specifically authorizes a charge for the use of city streets and rights-of-way. This is not a charge for maintaining regular and traditional governmental services, but rather is rent for occupation of city streets and rights-of-way. Since the applicable statute specifically authorizes this rental charge, the case of *City of Marion* is not in point. Thus, I concur with that part of the majority opinion that holds that the City of Little Rock is authorized by statute to charge for the use and occupation of its streets and rights-of-way.

## C.

The third significant section of the statute, subsection (b)(1), requires that any rent charged for the use of a city's streets or rights-of-way be reasonable. In pertinent part, it provides:

> Any public utility affected by any such ordinance [charging rent for rights-of-way] . . . may appeal from the action of the council . . . by filing . . . a written complaint with the [Arkansas Public Service] commission setting out wherein the ordinance . . . is *unjust, unreasonable,* or unlawful, whereupon the commission shall proceed . . . with the

same procedure that it would dispose of any other complaint. . . .

Ark. Code Ann. § 14-200-101(b)(1) (1987) (emphasis added). Even granting the rebuttable presumption of reasonableness of the charge, as set out in subsection (2), the rent assessed AT&T in the ordinance is unjust and unreasonable.

The ordinance provides that the amount charged AT&T is *"for the use of the public rights-of-way."* The stipulated facts, computations using those facts, and undisputed evidence are summarized as follows:

There are approximately 1,198 miles of streets, roads, and alleys in the City, and the City received from public utilities, as fees for the use of its rights-of-way, $718,415.43 in 1990, and $703,970.24 in 1991.

AT&T maintains twenty-three miles of fiber optic cables, and eight and one-half miles of those facilities are on the City's rights-of-way. AT&T's rental payment in 1990 was $290,715.15, and in 1991 was $264,195.72, or an average annual rent of $ 277,455.00 This amounts to an average of $34,682.00 per mile for use of the City's rights-of-way. AT&T does not own, possess, operate, or maintain any other facility within the City's rights-of-way.

Arkansas Louisiana Gas Company maintains 943 miles of facilities, and approximately 850 miles of those facilities are on the City's rights-of-way. Arkla paid an average of $2.5 million dollars, or about $2,940.00 per mile for use of the City's rights-of-way.

Southwestern Bell Telephone Company's average annual rental payment is $2 million dollars. About one-half of Southwestern Bell's facilities are on the City's rights-of-way, and about one-half are on private property. In the argument part of its brief the Public Service Commission cites the record and states that Southwestern Bell has facilities on about 1,000 miles of rights-of-way in the City. Assuming the ubiquitous availability of telephone service, Southwestern Bell's occupancy is probably on about half, or 500 miles of the City's rights-of-way. From these facts, it appears that Southwestern Bell pays about $2,750.00 per mile for use of the City's rights-of-way.

Arkansas Power and Light Company maintains 970 miles of overhead facilities in the City, and about 775 miles of those facilities are on the City's rights-of-way. It additionally maintains underground conduit, estimated by AT&T to be over 250 miles. AP&L paid an average rent of $8.8 million, or about $11,350.00 per mile if just the overhead facilities are counted. If the underground conduit are counted, the average cost per mile would be $5,900.00.

From the above statistics, AT&T concludes that it pays fourteen times as much rent per mile as Arkla, thirteen times as much as Southwestern Bell, and six times as much as AP&L. Neither the City nor the Public Service Commission dispute AT&T's conclusions.

### III.

The City does not deny that it charges AT&T a greater amount than the other utilities when the fee is considered on a per mile basis, and the Commission admits that "at first blush, [it] does make the charge assessed seem disproportionately high." However, the City, the Commission, and the majority opinion respond to AT&T's argument in two ways.

### A.

First, the City and the Commission argue that AT&T's cost per mile comparison is not valid because it ignores the 1,000 miles of the City's rights-of-way used by Southwestern Bell to gain access to telephone customers, and, they contend, without that arrangement, AT&T would have to maintain its own physical facilities. This response, questioning the comparative costs per mile, will not stand scrutiny for either of two reasons. The first is that AT&T pays charges or tariffs to Southwestern Bell that are regulated by the Public Service Commission and the Federal Communications Commission, and AT&T cannot direct Southwestern Bell to route long distance calls over either its City rights-of-way, which constitutes about one-half of Southwestern Bell's rights-of-way, or over privately owned right-of-way, which constitutes the other one-half of Southwestern Bell's rights-of-way. Moreover, the argument is inconsistent with the ordinance itself because the ordinance requires the rental charge to be applied to all of AT&T's long distance calls, even including those deliv-

ered over Southwestern Bell's facilities that are on private rights-of-way.

## B.

The second response by the City and the Commission is that a charge of a *percentage of gross revenue* as rent is not unreasonable or discriminatory when compared to the rentals charged other public utilities that operate within the City. The majority opinion adopts this rationale. The statute provides that a city can determine the terms *"upon which the public utility may be permitted to occupy the streets, highways, or other public places within the municipality."* Ark. Code Ann. § 14-200-101(a)(1) (1987) (emphasis supplied). This section provides that a city may levy a charge for occupying the geographical area of the streets and other rights-of-way. It is written in terms of physical occupation of space. The statute does not authorize a "franchise fee" for the use of the rights-of-way, and *it does not authorize the City to charge a gross receipts fee.* The majority opinion, in upholding a fee on gross receipts, refers to the case of *Goldberg* v. *Sweet,* 488 U.S. 252 (1989), but that case provides a solid underpinning for this dissent. In *Goldberg,* the statute at issue imposed a "5% tax on the gross charges of interstate telecommunications." The statute at issue in the case does not authorize a tax, and it does not authorize a tax on gross charges; it authorizes only a charge for the occupation of a city's streets and other rights-of-way.

The ordinance, drafted in contemplation of the statute, provides that it levies a charge "for the use of the public rights-of-way, including those public areas along, across, on, over, through, above, and under all public streets, avenues, alleys, public grounds and airways, and places in the city." The language patently shows that the charge is to be for the physical occupation of a geographical area of the streets and rights-of-way. Yet, the levy contained in the ordinance is based solely upon the minutes of long distance use by the telephone customer. In fact, the ordinance was deliberately drafted so that the fee could be passed on to the end user. In summary, the fee is not related to the physical use or occupancy AT&T makes of the City's streets or other rights-of-way. AT&T's occupancy of the rights-of-way is the same regardless of whether the fiber optic cable is carrying none, one, or a thousand long distance calls.

The majority opinion notes that "AT&T concedes, by acknowledging the telephone companies' payment of franchise fees during past years, its proposed construction of the Act has not been the one applied by the telephone companies and cities." The observation is valid and citation of *Mears* v. *Arkansas State Hospital*, 265 Ark. 844, 581 S.W.2d 339 (1979), is in point. However, one apparent reason for AT&T's change in position, while not admitted by AT&T, is sufficient to disregard the past payments that were made without objection by AT&T. In the past most, if not all, holders of franchises from the City held exclusive franchises. AP&L holds an exclusive franchise on furnishing electricity within the City, ARKLA holds an exclusive franchise on furnishing natural gas, and in the past AT&T held an exclusive franchise on furnishing long distance service. Such franchise holders are allowed by the PSC to charge a rate sufficient for a "reasonable rate of return." It would seem logical that an exclusive franchise holder would prefer that "reasonable rate of return" to be on the largest amount possible. For example, if the reasonable rate of return in any one year were determined to be ten percent, the franchise holder would prefer to make a ten percent return on two million dollars instead of on only one million dollars. The inherent difficulty with the "cost plus ten" concept is that such a system encourages high costs. It is most likely that while AT&T held an exclusive franchise on the long distance service, it relished the idea of higher costs by paying the franchise fee. Now, after the breakup of the parent American Telephone and Telegraph Company, it is in competition with Sprint, MCI, and LDDS. The concept of a guaranteed "cost plus ten" is gone, and AT&T must now change its position to meet competition. But the change in position affects more than AT&T. The change in position benefits the telephone user, the citizen, and taxpayer. Their rates should be lower. Under these circumstances, the past payment of the fee without protest should not defeat AT&T's current position.

## IV.

Charges are authorized for a public utility's occupation of "the streets, highways, or other public places within the municipality." Ark. Code Ann. § 14-200-101(a)(1) (1987). Such charges cannot be unjust or unreasonable. *Id.* § (b)(1). The charge levied against AT&T under the ordinance, when compared to charges

levied on other public utilities, is disproportionately high and discriminates against AT&T. Because the charge to AT&T is unjust and unreasonable, I respectfully dissent from the majority opinion.

CORBIN, J., joins in this dissent.

DONALD L. CORBIN, Justice, dissenting. Upon review, I agree with the decision of the court of appeals, *AT&T Communications* v. *City of Little Rock*, 44 Ark. App. 30, 866 S.W.2d 414 (1993), concluding the challenged levy in this case is an invalidly imposed tax, rather than a fee authorized by Ark. Code Ann. § 14-200-101(a) (1987). Section 14-200-101(a), the statutory authority claimed by the City of Little Rock for its enactment of this levy, patently empowers the City to assess "terms and conditions" for occupancy of its streets, highways, or other public places, acting by ordinance or resolution, which are then deemed to be prima facie reasonable. However, I agree with the court of appeals that, upon a closer look, the substance of this levy was, in fact, a tax, and, as such, could not have been validly imposed without its adoption by the qualified electors of the City pursuant to a special or general election. Ark. Code Ann. § 26-73-103 (1987).

By the simple act of taking a closer look at the challenged levy, I contravene the majority opinion which, it appears, summarily concludes that since the challenged levy is called a "franchise fee" and is enacted by the City pursuant to a declared exercise of its statutory authority under section 14-200-101(a), any judicial analysis of the levy with a view to classifying it as "fee" or "tax" is inappropriate. In short, I am not persuaded that the City's adoption of this levy via the mechanism of its statutory authority under section 14-200-101(a) necessarily precludes a fee versus tax analysis, or renders that analysis inappropriate considering the fact that although a valid section 14-200-101(a) "term and condition" may be enacted by ordinance alone, the enactment of a valid tax requires approval by the electorate. Hence, I am of the opinion that the analysis should be undertaken.

Clearly, it is difficult to classify this levy as a fee (and if so, what kind, *e.g.*, franchise, license, user, occupancy, rent), or a tax. PSC Order No. 17's findings of fact and conclusions of law summarize this point, in pertinent part, as follows:

2. How the charge imposed by the challenged ordinance is denominated will not be permitted to control the determination of its validity. The original enactment of the challenged ordinance, as well as its clarifying amendment, adopted in 1989, variously referred to this charge as both a fee and a tax. Subsequent renewals of this ordinance refer to it only as a franchise fee. It does not require extensive reading of the case law and municipal finance treatises to see that the technical historical and traditional distinction between a tax and a fee has become so blurred in modern usage and practical application that it has effectively lost its meaning. This blurring process was also noticed by Dr. Venus, [AT&T's] expert economist. Both parties seem to agree that the essential characteristics of the charge levied by the ordinance ought to control how it is viewed, and not how it is labeled. This is the approach which has been used in this case in analyzing the ordinance in question. Validity is being determined by looking at such things as under what legal authority the City claims the power to enact such an ordinance and how it impacts financially the utilities upon which it is imposed as compared to how other ordinances impact other utilities operating within the City of Little Rock.

Order No. 17 at pp. 8-9.

This court has addressed the fee versus tax analysis in several decisions, most notably, *City of Marion* v. *Baioni*, 312 Ark. 423, 850 S.W.2d 1 (1993). Although the majority opinion declares that the instant levy, because it is a charge enacted pursuant to statutory authority, is "wholly different from those fees discussed and dealt with in *Baioni*," I disagree and find the decision, and related cases cited therein, instructive as they outline the differences between a tax and a fee in the context of municipal enactments.

In *Baioni*, pursuant to a series of ordinances, the City of Marion charged "tapping fees" from builders or lot owners connecting onto the city's existing water and sewer systems, and "access fees" from any person or entity connecting to the city's transmission lines. These fees were applicable only to new development, and the funds collected therefrom were directed into separate accounts designated as the "water expansion account"

and "sewer expansion account" for use solely to expand the city's water and sewer system. The evidence indicated that the projected costs of water and sewer facilities per single family unit was $1,613.00, compared to the challenged connection fees which totaled $950.00 per single family unit.

The factors isolated by this court in its fee versus tax analysis in *Baioni* included the following:

> 1. A tax is a charge imposed for general revenue purposes; a fee is a charge imposed for the government's provision, pursuant to its police powers, of a special service to the fee's payors other than a service already in effect.

> 2. Proceeds of a fee are restricted for future use solely and exclusively to benefit the fee's payors, and for no other purpose. The court here noted especially that the proceeds of the challenged levy were segregated from the City's general revenue funds.

> 3. A fee must be fair and reasonable, and reasonably related to the benefits conferred upon the payors.

The court also noted that the label applied to the charge by the enactment or levy itself is not binding on the court's analysis of the charge as fee or tax. The court found the challenged charges in this case were valid fees, rather than invalid taxes.

In *City of North Little Rock* v. *Graham*, 278 Ark. 547, 647 S.W.2d 452 (1983), this court invalidated a "public safety fee" enacted pursuant by city ordinance, without voter approval, as an invalid tax. The challenged ordinance was adopted by the City for the purpose of raising a sum certain to implement municipal police and firemen salaries. The contested charge was a flat monthly fee imposed on each household, business and apartment in the municipality, exempting certain low-income persons. Again, in its analysis, this court found noteworthy the fact that the charge was imposed for the purpose of raising revenues for contribution toward the cost of maintaining the municipality's existing police and fire protection, rather than for providing a specific, special service for the payors of the tax.

Finally, in *Holman* v. *City of Dierks*, 217 Ark. 677, 233 S.W.2d 392 (1950), this court concluded an annual flat rate san-

itation tax imposed on each business house and dwelling in the city for the purpose of paying for fogging the city with an insecticide periodically during the year was, in fact, a valid "fee for performance of a service" and not a tax.

Applying the factors utilized in the preceding case law to the instant levy, I note the following:

*1. What was the purpose of the levy — to raise general revenues or to pay for a specific and special service rendered to the levy's payors?*

At the administrative hearing, the Deputy City Manager testified that the City recognized a need for additional revenues in the beginning of the 1988 budget cycle. Local telephone service companies were already paying a franchise fee. The City considered placing a franchise fee on long distance service companies using the public rights-of-way. In structuring the fee, the City knew how much revenue it was attempting to generate. This revenue, according to the Deputy City Manager's testimony, was to be used for all municipal purposes without restriction, not dedicated to any particular purpose, and not segregated from other general municipal funds. Unlike *Baioni*, in which the tapping fees were placed in segregated accounts to be solely used to expand the sewer and water systems and for no other purpose, the evidence in the instant case is that the fee was collected to supplement the City's general revenues without special use restriction.

*2. Are the proceeds of this levy restricted for a future use solely and exclusively to benefit its payors?*

Clearly not. As evidenced by the Deputy City Manager's testimony, the proceeds of this levy were always intended for use as general revenues for the City. The parties' stipulated facts confirmed that, since its enactment, the City has collected monies pursuant to the challenged franchise ordinance, and that the City treats revenues received under franchise ordinances as general revenues with no restrictions on their use.

*3. Is the levy fair and reasonable, and reasonably related to the benefits conferred upon the payors?*

Legitimate franchise fees are supported by both statutory and case law, and will be upheld so long as the fee is not unrea-

sonable. *See, e.g.,* E. McQuillen, *The Law of Municipal Corporations* § 34.81 (3d ed. 1986). "Reasonableness" in this context is determined by comparing the fee with the cost of the services to be provided to the fee payors. *Baioni,* 312 Ark. 423, 850 S.W.2d 1. In this case, the "service" provided was the right to use the City's public rights-of-way. This issue is discussed in detail in Justice Dudley's dissenting opinion in this case, in which I join as to that part which holds that the contested levy in this case is an unreasonable and discriminatory charge (parts II(C)- through IV therein).

In sum, after consideration of the substance of the challenged levy in accordance with the factors outlined above, I would find the levy is not a fee within the City's authority to enact pursuant to section 14-200-101(a), but is a tax which is invalid for lack of approval by the electorate in accordance with section 26-73-103. Finally, I note that, even if the instant levy were a fee rather than a tax, I would still find that it is invalid for the reasons that it is unreasonable and discriminatory in accordance with the rationale set forth in Justice Dudley's dissenting opinion.

For these reasons, I respectfully dissent from the majority opinion.