The Honorable Michael Lamoureux State Representative P.O. Box 1064 Russellville, AR 72811-1064
Dear Representative Lamoureux:
I am writing in response to your request for my opinion on the following questions, which you indicate relate to A.C.A. § 14-200-101:
 1. If a city of the first class that owns a waterworks system and leases said system pursuant to A.C.A. § 14-199-701 to a non-profit corporation, can the city levy a franchise fee on the non-profit corporation running the utility?
 2. Can a franchise fee be collected by a utility from customers located outside the municipality if the utility and most of its equipment supplying the customers outside the municipality is located inside the municipality?
 3. Can a city of the first class levy a franchise fee on a utility located in the municipality based on the total amount of revenue collected by the utility from the selling of its product regardless of whether some of the revenue came from customers outside the municipality?
RESPONSE
In my opinion, the answer to your first question is "yes." Even though the lessee corporation is deemed an "instrumentality" of the city pursuant to A.C.A. § 14-199-701, it nevertheless qualifies as a "public utility" under the applicable statutory definition set forth at A.C.A. §14-200-101. As such, it is subject to a franchise fee pursuant to A.C.A. § 24-200-101(a)(1)(A). In my opinion, the answer to your second question is "no." Subsection 14-200-101(a)(1)(D) of the Code expressly provides that a utility may recoup its franchise fee only "from its customers residing in each municipality." Accordingly, the utility may not apportion its recoupment among city dwellers and customers residing outside city limits. In my opinion, the answer to your third question is probably also "no," although the statute is not as clear as it might be. I believe that if a city elects to calculate a franchise fee as a percentage of a utility's revenues, it should in all likelihood do so based upon only those revenues realized from rates charged city residents.
Question 1: If a city of the first class that owns a waterworks systemand leases said system pursuant to A.C.A. § 14-199-701 to a non-profitcorporation, can the city levy a franchise fee on the non-profitcorporation running the utility?
In my opinion, the answer to this question is "yes."
Section 14-199-701 of the Arkansas Code (Repl. 1998) provides in pertinent part:
 (a) Any city of the first class, city of the second class, and incorporated town owning a waterworks system, sewer system, gas system, electric system, television signal distribution system, other municipal utility system, or any combination thereof, may lease such system or systems to any nonprofit corporation organized under the laws of the State of Arkansas, or may contract with any such nonprofit corporation, for the purpose of the management and operation of such system or systems for such period of time and upon such terms and conditions as may be deemed to be in the best interests of the city or town.
 (b) The nonprofit corporation shall manage and operate the utility system or systems solely on behalf of the city or town and shall be deemed an instrumentality thereof for such purpose.
(Emphasis added.) In my opinion, given its context, the term "instrumentality" in the highlighted passage above accords with the following accepted definition:
 A means or agency through which a function of another entity is accomplished, such as a branch of a governing body.
Black's Law Dictionary (7th ed. 1999). For purposes of managing the waterworks, then, the nonprofit corporation referenced in your question should be deemed an agency of the city itself.
In City of Little Rock v. ATT Comm., S.W., 318 Ark. 616, 888 S.W.2d 290
(1994), the Arkansas Supreme Court upheld a franchise fee that the city had imposed on ATT under the authority of A.C.A. §14-200-101(a)(1)(A). In discussing the statute, the court explained that such franchise fees are "in form, rental payments for a public utility's use of the municipality's right-of-way[.]" ATT Comm., S.W.,318 Ark. at 620. Insofar as a corporation managing a city's waterworks is an "instrumentality" of the city, to charge it a franchise fee would thus appear to amount to the city charging itself rent — a proposition that sounds like a logical contradiction. However, the fact remains that the lessee corporation qualifies as a "public utility" under the applicable statutory definition[1] and, as such, might legally be subject to a franchise fee pursuant to A.C.A. § 14-200-101 (Supp. 2001), which provides in pertinent part:
 (a)(1) Acting by ordinance or resolution of its council, board of directors, or commission, every city and town shall have jurisdiction to:
 (A) Except as provided in § 23-4-201,[2] determine the quality and character of each kind of, and rates for, product or service to be furnished or rendered by any public utility within the city or town and all other terms and conditions, including a reasonable franchise fee, upon which the public utility may be permitted to occupy the streets, highways, or other public places within the municipality, and the ordinance or resolution shall be deemed prima facie reasonable, provided that no franchise fee shall exceed the higher of the amount in effect as to that entity on January 1, 1997, or four and one-quarter percent (4 1/4%), unless agreed to by the affected utility or approved by the voters of the municipality[.]
(Emphasis added.) Accordingly, I believe a city might impose a franchise fee upon a nonprofit corporation of the sort referenced in your question.
Question 2: Can a franchise fee be collected by a utility from customerslocated outside the municipality of the utility and most of its equipmentsupplying the customers outside the municipality is located inside themunicipality?
In my opinion, the answer to this question is "no."
At issue is the application of A.C.A. § 14-200-101(a)(1)(D), which provides:
 Nothing herein shall limit the authority of the public utility to collect from its customers residing in each municipality an amount which equals the franchise fee assessed by the municipality on the public utility[.]
(Emphasis added.)
As the Arkansas Supreme Court reaffirmed in Mississippi RiverTransmission Corp. v. Weiss, 347 Ark. 543, 550, 65 S.W.3d 867 (2002):
 The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. Raley v. Wagner, 346 Ark. 234, 57 S.W.3d 683 (2001); Dunklin v. Ramsay, 328 Ark. 263, 944 S.W.2d 76 (1997).
 When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. Stephens v. Arkansas Sch. for the Blind, 341 Ark. 939, 20 S.W.3d 397 (2000); Burcham v. City of Van Buren, 330 Ark. 451, 954 S.W.2d 266 (1997).
In my opinion, the highlighted language is unambiguous in directing that the utility can recoup its franchise fee only from city residents. You have not asked, and I will not address, whether thus distinguishing between customers residing within and outside city limits might be characterized as unfair. I will merely opine that, as written, the statute authorizes a utility to recoup its franchise fee only from customers living within the city.
Question 3: Can a city of the first class levy a franchise fee on autility located in the municipality based on the total amount of revenuecollected by the utility from the selling of its product regardless ofwhether some of the revenue came from customers outside themunicipality?
In my opinion, the answer to this question is "no." I believe a city might calculate a franchise fee as a percentage of a utility's total revenues only if it bases its calculation on revenues realized exclusively from customers residing within the city.
As noted in my response to your first question, A.C.A. §14-200-101(a)(1)(A) provides in pertinent part "that no franchise fee shall exceed the higher of the amount in effect as to that entity on January 1, 1997, or four and one-quarter percent (4 1/4%), unless agreed to by the affected utility or approved by the voters of the municipality." This statute is silent on the question of whether the recited percentile figure refers to revenues realized within the city or the utility's overall revenues.
In my opinion, the 4 1/4% cap should be read as applying only to revenues earned from customers living in the city. As reflected in my response to your previous question, A.C.A. § 14-200-101(a)(1)(D) provides that a utility may collect franchise fees only from residents of the municipality. Similarly, A.C.A. § 14-200-101(a)(1)(D) conditions a city's imposing any franchise fee exceeding the recited 4 1/4% upon approval "by the voters of the municipality" (emphasis added). These provisions focusing on the residents of the municipality suggest that the legislature intended the statute to affect only municipal residents.
In some instances, when a utility is based in a city and serves only a limited number of households located outside city limits, it might appear appropriate to base the franchise rate on the revenues realized from all households served, regardless of whether these or located within city limits. However, some utilities are regional in nature, and their overall revenues far exceed the revenues realized from residents in a single city authorized to impose a franchise fee pursuant to A.C.A. §14-200-101(a)(1)(A). In such instances, it would clearly be inappropriate to allow the city to impose a franchise fee comprising a percentage of overall revenue, just as it would be inappropriate to allow the utility to recoup that inflated fee from city residents. Accordingly, I believe A.C.A. § 14-200-101(a)(1)(A) should be read as meaning that if a city elects to impose a franchise tax comprising a percentage of the utility's revenues, it should use as a basis for its computation the revenues realized from city residents only. However, legislative clarification on this question appears warranted.
Finally, I will reiterate that the overarching criterion recited in the statute for imposing a franchise fee is that it be "reasonable." Even if a city were justified in using a utility's overall revenues as a basis for computing a franchise fee — a formula I do not believe is warranted under the statute — that fee would still be subject to challenge if it were unreasonable under the circumstances. Only a finder of fact could make this determination on a case-by-case basis.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
Enclosure
[1] Although A.C.A. § 14-200-101(a)(1)(E) does not expressly include waterworks within its definition of "public utility," I have recently opined that waterworks fall within the category of "similar services" included within the definition. See the attached Ark. Op. Att'y Gen. No.2003-172.
[2] The referenced statute grants the PSC the exclusive authority to set the rates a utility may charge its customers. See City of Fort Smithv. Arkansas Public Service Commission, 278 Ark. 521, 648 S.W.2d 40 (1983) (holding that A.C.A. § 23-4-201 divests cities and towns of any jurisdiction A.C.A. § 14-200-101 might otherwise have granted them to determine utility service rates).