## CITY OF MARION, Arkansas, et al. *v.* Primo BAIONI, James R. Williford and Crittenden County Homebuilders Association

92-924                                              850 S.W.2d 1

Supreme Court of Arkansas
Opinion delivered March 29, 1993
[Rehearing denied May 3, 1993.]

*Hale, Fogleman & Rogers*, for appellants.

*Sloan, Rubens & Peeples*, by: *Kent J. Rubens*, for appellees.

TOM GLAZE, Justice. This case involves certain sewer and water "tap and access fees" the City of Marion has charged appellees, as developers of residential land in and around the city. Marion has experienced a considerable growth in population since 1975, and this influx of new people has resulted in the city exceeding the design capacity of both its water and sewer systems. Between July of 1988 and August of 1990, the city enacted a series of ordinances that placed "tapping fees" on builders or lot owners connecting on to the city's existing water and sewer systems and required "access fees" from any person or entity connecting to the city's transmission lines. These fees only apply to new development. The ordinances, as amended, provide that the funds collected from these respective fees must be placed in separate accounts designed as the "water expansion account" and "sewer expansion account," and used solely to expand the city's water and sewer systems.

The appellees brought suit challenging the constitutionality

of the city's ordinances as well as their validity under state law. The chancellor held the ordinances invalid, finding that the fees assessed under the city's ordinances amounted to a general revenue raising scheme and therefore "taxes," that had not been approved by the vote of the people as required under Ark. Code Ann. § 26-73-103 (1987). The city appeals the chancellor's decision.

We first point out, as did the chancellor below, that a municipality's ordinance levying a tax is not valid until the tax is adopted by the voters of the city at a special or general election. § 26-73-103. Here the City of Marion held no election to authorize a tax to expand the city's water and sewer systems, presumably because the city believed it could underwrite the costs of such expansions by charging tapping and access fees (sometimes called impact fees) to persons who would benefit from such extensions.

The distinction between a tax and a fee is that government imposes a tax for general revenue purposes, but a fee is imposed in the government's exercise of its police powers. *City of North Little Rock* v. *Graham*, 278 Ark. 547, 647 S.W.2d 452 (1983). An example of a fee charged in the exercise of a city's police power is found in *Holman* v. *City of Dierks*, 217 Ark. 677, 233 S.W.2d 392 (1950). There, the court held that an "annual sanitation charge" of $4.00 per business and residence which was to pay for fogging the city with insecticide three times a year was a fee, not a tax, for services to be rendered. On the other hand, the *Graham* court considered the validity of a North Little Rock ordinance which imposed a $3.00 per month "public safety fee" on the water bill of each household, business and apartment resident for the purpose of increasing the salaries of the city policemen and firemen and held such a fee was in actuality a tax because the so-called fee was for the cost of maintaining a traditional governmental function and services already in effect and not for a special service as was the case in the *Holman* case. 278 Ark. at 549, 647 S.W.2d at 453. As is illustrated by the *Graham* decision, this court in determining whether a governmental charge, assessment or fee is a tax is not bound by how the enactment or levy labels it. *See also City of Hot Springs* v. *Vapors*, 298 Ark. 444, 769 S.W.2d 1 (1989); cf. *Rainwater* v. *Haynes*, 244 Ark. 1191, 428 S.W.2d 254 (1968).

■ In this case, the chancellor reviewed considerable legal authority leading him to the general conclusion that a governmental levy or fee, in order not to be denominated a tax, must be fair and reasonable and bear a reasonable relationship to the benefits conferred on those receiving the services. We agree with the chancellor's conclusion, which seems to be the prevailing rule in other jurisdictions. However, the rule's application is not always an easy one for the courts. *See Bldg. Ind. Ass'n of S. Cal. v. City of Oxnard*, 198 Cal. Rptr. 63 (Cal. App. 2 Dist. 1984) (a growth requirement capital fee applicable to new development held a tax because the fee was designed to collect revenues to benefit the community as a whole); *Contractors & Builders Ass'n v. City of Dunedin*, 329 So.2d 314 (Fla. 1976) (connection fees to expand water and sewage systems held a tax because the use of the money collected was not limited to the costs of expansion); *Eastern Diversified v. Montgomery County*, 570 A. 850 (Md. 1990) (development impact fees to raise funds to finance construction of roads held a tax because funds benefited general public); *Amherst Builders Assn v. City of Amherst*, 61 Ohio St.2d 345, 402 N.E.2d 1181 (1980) (sewer tap-in or connection fees of $400 for single family homes of new users upheld as valid fee, not a tax); *but see State Ex Rel. Waterbury Development v. Witten*, 58 Ohio App.2d 17, 387 N.E.2d 1380 (1977) (water tap-in fee of $720 held a tax because it exceeded cost of service provided new users); *Hayes v. City of Albany*, 490 P.2d 1018 (Or. App. 1971) (sewer connection fee of $255 for a single family dwelling for construction and expansion of sewer system held valid because proceeds must be used directly in development and maintenance of sewer system); *Haugen v. Gleason*, 359 P.2d 108 (Or. 1961) (land acquisition fee held tax because the use of money produced no direct benefit or relationship to the new division); *Hillis Homes, Inc. v. Snohomish County*, 97 Wash.2d 804, 650 P.2d 193 (1982) (development fees imposed on new residential subdivisions constituted taxes because the primary purpose was to raise money not regulate land subdivision).

In the present case, the chancellor found that the City of Marion had demonstrated that the costs or fees were fair and equitable, reasonably related to the benefits conferred on the appellees (developers and builders), and are restricted to future use for expansion of the water and sewer systems. Nonetheless,

the chancellor still opined the access and tapping fees constituted unauthorized taxes because the fee amounts provided in the city ordinances exceeded the direct cost of the services to be provided to new users and the funds raised were designated for future improvements traditionally provided and underwritten by the city. We must disagree with the chancellor.

■ Under the City of Marion ordinances, sewer and water fees total $950.00 for each single family unit. While $150.00 of this amount is required to tap-in to the sewer system, the actual cost of tapping-in is about fifteen or twenty dollars. The chancellor held, and appellees argue on appeal, that because the fees imposed by the city exceed the services provided, the fees are in actuality taxes. Such a conclusion ignores the fact that the tapping and access fees established by Marion are for the raising of funds to pay for the extension of existing water and sewer systems to developments where new users reside. Raising such expansion capital by setting connection charges, which do not exceed a pro rata share of reasonably anticipated costs of expansion, is permissible where expansion is reasonably required, *if the use of the money is limited to meeting the cost of that extension. Contractors & Builders Ass'n*, 329 So.2d 314; *see also Amherst Builders Assn*, 61 Ohio St. 345, 402 N.E.2d 1181.

■ Here, the city's expert witness, John Sheahen, testified that he determined an appropriate level of fees to developers that justified the projected costs of water and sewer facilities needed to serve future customers. He said that the projected costs for extending the water system would require $805.00 per single family unit and sewer costs would require $808.00 per unit. Obviously, the city's combined water and sewer connection fees, $950.00, imposed on builders and developers for new users is considerably less than the costs projected by Sheahen — $1,613.00 per single family unit. Such evidence certainly supports the chancellor's finding that the city's fees are reasonably related to the benefits conferred on the appellees, and in our de novo review of the record, we also conclude the fee amounts established by the city are more than reasonable.

■ Of major importance, we point out that the city ordinances require the tapping and access fees to be segregated and placed into accounts to be used solely and exclusively to

expand the capacity of the city's water and sewer systems. In other words, these funds will be used directly to benefit the new users and for no other purposes. *Graham*, 278 Ark. 547, 647 S.W.2d 452; *Contractors & Builders Ass'n*, 329 So.2d 314; *Amherst Builders Assn*, 61 Ohio 345, 402 N.E.2d 1181. This fund restriction distinguishes this case from those situations where municipalities have imposed fees to underwrite the costs of a special service to a new development but instead the monies benefited the general public. *Id.*

While appellees make little mention of it in their argument, they do touch on the idea that Marion's ordinances violate the equal protection clause because these city enactments treat appellees differently than non-resident users located in five areas surrounding Marion. These non-residents use approximately 25% of the city's present water and sewer capacity. The chancellor did not reach this constitutional issue below, and we do not feel obliged to do more than to say Marion's ordinances are presumed constitutional. Thus, it is appellees' burden in these circumstances to show the ordinances are not rationally related to achieving a legitimate government objective. *See Streight* v. *Ragland*, 280 Ark. 206, 655 S.W.2d 459 (1983). Arkansas law permits cities under certain circumstances to contract with non-resident users to provide water and sewer services. Ark. Code Ann. § 14-234-111 (1987). Marion has done so for years — though it also has expressed these users will now face possible impact fees at the end of their respective agreements. In any event, the city justifies its present disparate treatment of these five users because it incurs no operation or maintenance expense for these customers' systems. Based on the record and argument before us, we are unable to accept appellees' suggestion that the city's ordinances violate the equal protection clause.

In conclusion, appellees attempt to challenge on cross-appeal certain provisions in city ordinance 123, and contend these provisions could force appellees to donate land for parks as a condition for having a subdivision approved. The chancellor rejected appellees' argument below, but the record reflects appellees filed no appeal from that ruling. Therefore, we must dismiss appellees' cross-appeal as the record fails to show a notice of cross-appeal was ever filed. *Edwards* v. *Neuse*, 312 Ark. 302, 849 S.W.2d 479 (1993).

For the above reasons, we reverse this cause on direct appeal and dismiss appellees' cross-appeal.