Colonel John R. Bailey, Director Arkansas State Police #1 State Police Plaza Drive Little Rock, Arkansas 72209
Dear Colonel Bailey:
This is in response to your request for an opinion concerning the performance of background checks on prospective purchasers of handguns in light of the recent decision by the United States Supreme Court in Printzv. United States, 521 U.S. ___ (decided June 27, 1997). More specifically, you have presented the following questions:
 1. Does A.C.A. § 12-12-1009 give the Arkansas State Police sufficient authority to continue the Brady background checks in view of the Printz ruling?
 2. If you find that the previous question is answered in the affirmative, does A.C.A. § 12-12-1012, or any other statute, allow the Arkansas State Police to charge a fee for conducting a federally mandated Brady check?
 3. Is the Arkansas State Police likely to prevail on the merits in defending a case for illegal exaction if we resume the Brady background checks and collect a fee under the foregoing statutes?
In Printz, the Court concluded that the federal government could notcompel state and local law enforcement officers to conduct background checks under the Brady Handgun Violence Protection Act. It is my opinion, however, that independent statutory authority exists in Arkansas law authorizing the Arkansas State Police to perform background checks on individuals seeking to purchase handguns, and that the Arkansas State Police may provide conviction information to federally-licensed firearms dealers. It is also my opinion that the Arkansas State Police may charge a fee for conducting a background search and providing the results to firearms dealers.
Question 1 — Does A.C.A. § 12-12-1009 give the Arkansas State Policesufficient authority to continue the Brady background checks in view ofthe Printz ruling?
Pursuant to the interim provisions of the Brady Handgun Violence Protection Act, 18 U.S.C. § 922(s), federally-licensed firearms dealers are generally required to obtain the name, address, and date of birth of each prospective buyer as well as a sworn statement containing certain personal information about the buyer. 18 U.S.C. § 922(s)(1)(A)(i); seealso Koog v. United States, 79 F.3d 452 (5th Cir. 1996), cert denied,Gonzales v. U.S. and U.S. v. Gonzales, ___ S.Ct. ___ (June 27, 1997). The dealer is then required to forward this information to the chief law enforcement officer (CLEO) of the place of residence of the buyer or to the particular official who has been designated to receive such notice.Id. The dealer may sell the handgun to the prospective buyer if the CLEO notifies the dealer that he has no information that would disqualify the purchaser or if the five-day period expires without a response from the CLEO. 18 U.S.C. § 922(s)(1)(A)(ii); see also Koog, supra. The Arkansas State Police, of course, has complied with the federal act as the CLEO designated to receive notice from the dealers. See Op. Att'y Gen. No.94-174.
In Printz, however, the Supreme Court held that the mandatory obligation imposed by the Brady Act on chief law enforcement officers to perform background checks on prospective handgun purchasers is unconstitutional. Thus, the Arkansas State Police are not required, as formerly believed, to perform background checks as a matter of federal law. Printz,
however, did not end the requirement that federally-licensed firearms dealers must meet certain obligations under the Brady Act nor did it suggest that the states could not or should not continue to perform the checks. See Koog, supra (duties imposed upon federally-licensed firearms dealers are severable from requirement that local law enforcement officers conduct background checks).
Arkansas Code Annotated §§ 12-12-1009 and 12-12-1011 grant the Arkansas State Police the authority to disseminate conviction information to any nongovernmental entity authorized by federal law to receive such information. Under the Brady Act, a federally-licensed firearms dealer is authorized to receive information concerning whether the receipt or possession of the handgun by the prospective purchaser would be in violation of federal, state, or local law. 18 U.S.C. § 922(s)(1)(A)(ii), (s)(4) and (s)(5). Accordingly, the State Police may provide conviction information to federally-licensed firearms dealers.
Without question, the Arkansas Crime Information Center is authorized to collect and maintain criminal history information. See generally A.C.A. §§ 12-12-1001 and 1003. The General Assembly has specifically addressed the release of information (dissemination) for criminal justice purposes, noncriminal justice purposes, and other purposes. See A.C.A. §§12-12-1008—1010. Arkansas Code Annotated § 12-12-1009(a) provides in part that "Conviction information shall be made available for the following noncriminal justice purposes: . . . (2) To any nongovernmental entity authorized either by the record subject in writing or by state or federal law to receive such information."[1] Conviction information is defined in A.C.A. § 12-12-1001(3) as "criminal history information disclosing that a person has pleaded guilty or nolo contendere to, or was found guilty of, a criminal offense in a court of law, together with sentencing information." Because conviction information pursuant to a Brady request is being disseminated to a federally-licensed firearms dealer rather than to a criminal justice agency, the information is necessarily being made available for one of the enumerated noncriminal justice purposes.
Question 2 — If you find that the previous question is answered in theaffirmative, does A.C.A. § 12-12-1012, or any other statute, allow theArkansas State Police to charge a fee for conducting a federally mandatedBrady check?
It is my opinion that the Department of Arkansas State Police Identification Bureau (Identification Bureau) is authorized to charge a fee for providing criminal history information for noncriminal justice purposes. See A.C.A. § 12-12-1012. The amount of such fee is to be determined jointly by the Identification Bureau and the Arkansas Crime Information Center, but it may not exceed twenty dollars. Id.
Question 3 — Is the Arkansas State Police likely to prevail on the meritsin defending a case for illegal exaction if we resume the Bradybackground checks and collect a fee under the foregoing statutes?
I must note initially that because the outcome of any litigation will turn largely upon the evidence that is presented to the court, and upon the court's acceptance or rejection of such evidence, I am not in a position to predict the likelihood of any party's success in such litigation. It is, nevertheless, my opinion that the collection of the fee that is authorized under A.C.A. § 12-12-1012 does not constitute an "illegal exaction."
The prohibition against "illegal exactions" is set forth in Article 16, § 13 of the Arkansas Constitution, which states: "Any citizen of any county, city or town may institute suit in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever." The Arkansas Supreme Court has recognized that an "illegal exaction" can take two forms: (1) a misapplication of public funds and (2) an illegal tax. Pledger v.Featherlite Precast Corp., 308 Ark. 124, 823 S.W.2d 852 (1992), cert.denied, 506 U.S. 826, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). The situation about which you have inquired clearly does not involve the misapplication of public funds. Accordingly, the question is whether the charge under consideration constitutes an "illegal tax."
It is my opinion that it does not. More specifically, it is my opinion that the charge that is authorized under A.C.A. § 12-12-1012 constitutes a "fee" rather than a "tax" and that therefore the "illegal exaction" clause of the Arkansas Constitution (Article 16, § 13) is not implicated.
The Arkansas Supreme Court has recognized a distinction between a "tax" and a "fee." In City of Marion v. Baioni, 312 Ark. 423, 850 S.W.2d 1
(1993), the court succinctly explained the distinction as follows:
 The distinction between a tax and a fee is that government imposes a tax for general revenue purposes, but a fee is imposed in the government's exercise of its police powers. City of North Little Rock v. Graham, 278 Ark. 547, 647 S.W.2d 452 (1983).
See also Barnhart v. City of Fayetteville, 321 Ark. 197, 900 S.W.2d 539
(1995).
The above-quoted language from City of Marion v. Baioni, as well as the authorities cited by the court therein, indicates that if a charge is imposed for the purpose of providing specific services in the exercise of governmental police power, the charge constitutes a "fee" rather than a "tax." Under these authorities, the "illegal exaction" clause will not be implicated if the charge is a "fee" rather than a "tax."
The charge that is authorized by the provisions of A.C.A. § 12-12-1012
is, in my opinion, a "fee" rather than a "tax," and, therefore, the imposition of the charge cannot constitute an "illegal exaction."
My conclusion regarding this matter is based upon the fact that the provisions of A.C.A. § 12-12-1012 designate specific uses for the charge, as follows:
 (b)(1) All fees shall be deposited immediately in the State Treasury as special revenue to the credit of the State Police Equipment Fund, which is hereby created on the books of the Treasurer of State, Auditor of State, and Chief Fiscal Officer of the State, there to be used for the acquisition of an automated fingerprint identification system.
 (2) Effective July 1, 1997, such fees shall then be credited fifty percent (50%) to the Crime Information System Fund and fifty percent (50%) to the State Police Equipment Fund, there to be used for the continued operation and expansion of the automated criminal history system and for the operation and expansion of the automated fingerprint identification [sic] system, subject to legislative appropriations. Any balance in the State Police Equipment Fund on June 30, 1997, may also be used for the operation and expansion of the automated fingerprint identification system.
 (3) Special revenues deposited in the Crime Information System Fund and the State Police Equipment Fund may be used for personal services and operating expenses as provided by law, for conducting criminal background checks for noncriminal justice purposes, and such special revenues unused at the end of any fiscal year shall be carried forward.
A.C.A. § 12-12-1012(b), as amended by Acts 447 and 1102 of 1997.
Because, as indicated by the above-quoted statutory language, the proceeds of the charge authorized by A.C.A. § 12-12-1012 are to be used for the purpose of providing specific services in the exercise of governmental police power, rather than being used for general governmental purposes, I must conclude that the charge constitutes a "fee" rather than a "tax." Accordingly, it is my opinion that the imposition of the charge cannot implicate the "illegal exaction" clause of the Arkansas Constitution.
After Printz, although the State Police has no federal obligation to comply with the Brady Act, it has the state statutory authority to provide federally-licensed firearms dealers information consistent with their federal obligation under the Brady Act. In addition, it has the state statutory authority to charge a fee for providing such information.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Warren T. Readnour.
Sincerely,
WINSTON BRYANT Attorney General
WB:WTR/cyh
[1] The clause "or federal" was not included in the original act, Act 1109 of 1993, but was inserted by Acts 37 and 38 of 1994 (2nd Ex. Sess.). It should also be noted that the use of the term "shall" in a statute generally means the legislature intended mandatory compliance; therefore, it would appear that either the Department of Arkansas State Police Identification Bureau or the Arkansas Crime Information Center must make the information available. See A.C.A. § 12-12-1011 (Criminal history information for noncriminal justice purposes may only be released by the Department of Arkansas State Police Identification Bureau or the Arkansas Crime Information Center pursuant to the limitations contained in A.C.A. § 12-12-1009).