The Honorable Stephen Bright State Representative 127 Southshore Drive Maumelle, AR 72113-5810
Dear Representative Bright:
You have presented the following questions for my opinion:
 (1) Under ACA 14-200-101(a)(1)(E) is the Maumelle Water Management District (the "District") a public utility by reason of its activities in providing water and sewer services to the residential, commercial and industrial consumers located within the corporate limits of the City of Maumelle ("City")?
 (2) Pursuant to ACA 14-200-101(a)(1)(A), does the City possess the lawful right and power to impose a franchise fee upon the District based upon the gross revenues collected by the District for water consumption and sewer services provided to the water consumers located within the corporate limits of the City?
 (3) If the City imposes a franchise fee upon the District based upon the gross revenues collected by the District for water consumption and sewer services provided to residential, commercial and industrial consumers located within the corporate limits of the City, does the District possess the lawful right and power to pass on to its residential, commercial and industrial customers the amount of such franchise fee together with the cost of billing, collecting and remitting same to the City?
You have provided the following background information: The Maumelle Suburban Improvement District No. 500 operates under the name Maumelle Water Management (the "District"). The District and its predecessor Maumelle New Town Water Sewer Suburban Improvement District No. 306 are both Arkansas suburban improvement districts organized pursuant toAct No. 41 of 1941 as amended by Act No. 286 of 1947, Act No. 16 of 1970
and Act No. 360 of 1971. When the District was formed in 1975, all of the area encompassed within its boundaries was located in the unincorporated area of Pulaski County, Arkansas. The District's improvements were originally financed through a one-time assessment of the only two landowners within the District and through government grants. Subsequent improvements have been financed through operational revenues. The City of Maumelle was incorporated in 1985, and its incorporated area encompassed the District.[1] The District now provides water and sewer services to all of the residential, commercial and industrial consumers located within the corporate limits of the City of Maumelle, which currently has a population in excess of 12,000. The District now operates under the registered fictitious name of Maumelle Water Management.
Recently, proposed Ordinance Number 475 has been filed with the Maumelle City Clerk for consideration by the Maumelle City Council to impose a franchise tax upon the revenues derived by the District from the sale of water and sewer services. You have enclosed a copy of Ordinance 475 for my review. It purports to impose a fee upon the District for the privilege of doing business within the city. The fee is to be calculated on the basis of the District's monthly revenues.
RESPONSE
Question 1 — Under ACA 14-200-101(a)(1)(E) is the Maumelle WaterManagement District (the "District") a public utility by reason of itsactivities in providing water and sewer services to the residential,commercial and industrial consumers located within the corporate limitsof the City of Maumelle ("City")?
It is my opinion that the Maumelle Water Management District, as you have described it, is a "public utility" within the meaning of A.C.A. §14-200-101(a)(1)(E).
That statute defines the term "public utility" as follows:
 (E) The term "public utility", for the purposes of this section, shall mean any electric, gas, sewer, or telephone company, and any company providing similar services, except those currently excluded pursuant to § 23-1-101(9)(B)(ii); and provided further that, when franchise fees assessed for basic local exchange services are based on revenues, such revenues shall consist of revenues from basic local service, excluding, among other things, extension, terminal equipment, toll, access, yellow pages, and other miscellaneous equipment revenues.
A.C.A. § 14-200-101(a)(1)(E) (emphasis added).
In my opinion, a water improvement district falls within the meaning of the phrase emphasized above: "any company providing similar services." Water service, in common parlance, is similar to the various public services listed in the previous phrase (electric, gas, sewer, and telephone service) and is commonly grouped with such services in ordinary discourse. Moreover, water improvement districts do not fall within the exception language (i.e., it is not one of the entities that are excluded from the definition of "public utility" under A.C.A. §23-1-101(9)(B)(ii)).[2] Although a question could arise as to whether a suburban improvement district is a "company," it is my opinion that the District, as you have described it, does constitute a "company" for purposes of A.C.A. § 14-200-101(a)(1)(E). The term "company" is not defined for purposes of the statute. Accordingly, it must be given its ordinary meaning in common usage. See Bourne, v. Board of Trustees,347 Ark. 19, 59 S.W.3d 432 (2001). A good source for determining ordinary meaning in common usage is the dictionary. The Merriam-Webster Online Dictionary gives various definitions of the "company," among which are: "a: a chartered commercial organization or medieval trade guild; b: an association of persons for carrying on a commercial or industrial enterprise." These definitions clearly encompass the District as you have described it. Accordingly, I conclude that the District is a "company" that provides a service "similar to" those listed in A.C.A. §14-200-101(a)(1)(E).
For the foregoing reasons, I conclude that the Maumelle Water Management District is a "public utility" within the meaning of A.C.A. §14-200-101(a)(1)(E).
Question 2 — Pursuant to ACA 14-200-101(a)(1)(A), does the City possessthe lawful right and power to impose a franchise fee upon the Districtbased upon the gross revenues collected by the District for waterconsumption and sewer services provided to the water consumers locatedwithin the corporate limits of the City?
It is my opinion, as explained more fully below, that the answer to the question of whether the city is authorized to impose the fee at all under the authority of A.C.A. § 14-200-101 (regardless of how it is calculated) will depend upon who owns the space located within the City that is utilized by the District. Assuming that the city does have the authority to impose the fee under A.C.A. § 14-200-101, the manner of its calculation will be presumed reasonable, but could present a problem if the fee is deemed to constitute a license to do business under A.C.A. §26-77-102. Again, these issues are discussed more fully below.
I will begin by setting forth the statutory section at issue. It states:
 (a)(1) Acting by ordinance or resolution of its council, board of directors, or commission, every city and town shall have jurisdiction to:
 (A) Except as provided in § 23-4-201, determine the quality and character of each kind of, and rates for, product or service to be furnished or rendered by any public utility within the city or town and all other terms and conditions, including a reasonable franchise fee, upon which the public utility may be permitted to occupy the streets, highways, or other public places within the municipality, and the ordinance or resolution shall be deemed prima facie reasonable, provided that no franchise fee shall exceed the higher of the amount in effect as to that entity on January 1, 1997, or four and one-quarter percent (4 1/4%), unless agreed to by the affected utility or approved by the voters of the municipality[.]
A.C.A. § 14-200-101(a)(1)(A).
In City of Little Rock v. ATT Comm., S.W., 318 Ark. 616, 888 S.W.2d 290
(1994), the Arkansas Supreme Court upheld a franchise fee that had been imposed by the city on ATT under the authority of A.C.A. §14-200-101(a)(1)(A). In discussing the statute, the court explained that the franchise fees that are authorized by A.C.A. § 14-200-101(a)(1)(A) are "in form, rental payments for a public utility's use of the municipality's right-of-way[.]" City of Little Rock v. ATT Comm.,S.W., 318 Ark. at 620.
The court's characterization of the franchise fees as "rental payments" indicates that such fees are appropriate only when the utility is utilizing space owned by the city. Thus, if the City of Maumelle owns the space utilized by the District in providing water service, a franchise fee for the use of that space is authorized under A.C.A. § 14-200-101.
I note that the holding of ATT, supra, appears to resolve any doubt as to whether a franchise fee that is duly imposed under the authority of A.C.A. § 14-200-101 could be characterized as an unlawful "tax." TheATT court held that the tax/fee cases[3] involving a dispute of that nature are simply inapplicable to situations in which the city is statutorily authorized to impose franchise fees upon public utilities for the use or occupancy of the cities' rights-of-way. Regarding this issue, the court stated:
 [T]he fee imposed by the City of Little Rock here against ATT is called a "franchise" fee, and is wholly different from those fees discussed and dealt with in [City of Marion v. Baioni, 312 Ark. 423, 850 S.W.2d 1 (1993) (fee proceeds must be strictly segregated from general revenues in order to avoid being classified as a "tax.")]. By statutory law, a municipality may by ordinance assess and determine a rate/fee for service rendered by any public utility occupying streets (rights-of-way) within the municipality, and such an ordinance is deemed prima facie reasonable. Ark. Code Ann. 14-200-101—14-200-104. In common parlance, such franchise fees are, in form, rental payments for a public utility's use of the municipality's right-of-way[.]
City of Little Rock v. ATT Comm., S.W., 318 Ark. at 620.
Thus, it appears that a franchise fee that is duly imposed under the authority of A.C.A. § 14-200-101 cannot be argued to constitute an unlawful "tax."
The fact that the fee that would be imposed under Ordinance No. 475 is to be calculated on the basis of revenues does not present a problem under A.C.A. § 14-200-102. Even though that statute does not provide a formula for calculating the franchise fee, the statute does state that ordinances imposing such fees are to be deemed prima facie reasonable (provided they are within the statutory limits), and a challenger will bear the burden of showing otherwise. Indeed, the ATT court noted this fact and even rejected the argument that a right-of-way franchise fee must in all cases be based upon the occupation of physical space within the city. The fee in that case was a $.004 per minute charge on all long distance telephone calls that were billed to city service addresses. The court did note that a calculation based on the occupation of physical space might be more reasonable for types of businesses other than the telecommunications business, which involves the transmission of intangible and physically immeasurable units.
A revenue-based calculation does, however, bring to mind another issue that could arise concerning Ordinance No. 475. A question could be raised as to whether the fee imposed under the ordinance actually constitutes a license to do business in the city, such as is authorized under A.C.A. §26-77-102. If so, the fact that the fee is calculated on the basis of revenue would be problematic. Cities are prohibited from calculating the license fees that are authorized by A.C.A. § 26-77-102 on the basis of income. See A.C.A. § 26-77-102(d); WSC, Inc. v. City of Jacksonville,302 Ark. 295, 789 S.W.2d 448 (1990). The Arkansas Supreme Court has never addressed the question of how to distinguish a license fee under A.C.A. § 26-77-102 from a franchise fee under A.C.A. § 14-200-101.
Question 3 — If the City imposes a franchise fee upon the District basedupon the gross revenues collected by the District for water consumptionand sewer services provided to residential, commercial and industrialconsumers located within the corporate limits of the City, does theDistrict possess the lawful right and power to pass on to itsresidential, commercial and industrial customers the amount of suchfranchise fee together with the cost of billing, collecting and remittingsame to the City?
It is my opinion that the provisions of A.C.A. § 14-200-101(a)(1)(D) expressly authorize the District to pass the amount of the franchise fee authorized thereunder to its customers. However, the statute does not authorize passing on the cost of billing, collecting, and remitting the franchise fee. The pertinent section of the statute states:
 (D) Nothing herein shall limit the authority of the public utility to collect from its customers residing in each municipality an amount which equals the franchise fee assessed by the municipality on the public utility[.]
A.C.A. § 14-200-101(a)(1)(D).
On the basis of this plain language, I conclude that the District may pass on to its customers an amount equal to the franchise fee, but it may not pass on to its customers the cost of billing, collecting, and remitting the franchise fee to the City.
As a final matter, I point out that under the provisions of A.C.A. §14-200-101, public utilities upon which a city imposes a franchise fee are entitled to appeal to the Public Service Commission, which has the authority to investigate, hear, and determine the issues.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
[1] I note that A.C.A. § 14-92-205, one of the statutes under which the District was organized as a suburban improvement district, provides that the majority of the reality within a suburban improvement district must not be located within the city limits of a municipality. The law does not address the effect of the incorporation of the entire area of a district into a municipality. You have not asked about the impact of that issue upon the situation you have described, nor do I address that issue herein.
[2] A.C.A. § 23-1-101(9)(B)(ii) states:
(B) The term "public utility", as used for rate-making purposes only:
* * *
 (ii) Shall not include persons or corporations providing cellular telecommunications service and not providing any other public utility service in this state, unless the commission finds by order, after notice and hearing and upon substantial evidence, and which shall not take effect pending appeal therefrom, that the public interest requires the application of some or all of the provisions of subdivision (9) of this section to such persons or corporations.
[3] See, e.g., Harris v. City of Little Rock, 344 Ark. 95,40 S.W.3d 214 (2001); Tucker v. Holt, 343 Ark. 216, 33 S.W.3d 110 (2000);Barnhart v. City of Fayetteville, 321 Ark. 197,900 S.W.2d 539 (1995); City of Marionv. Baioni, 312 Ark. 423, 850 S.W.2d 1 (1993); City of North LittleRock v. Graham, 278 Ark. 547, 647 S.W.2d 452 (1983).