The Honorable Shane Broadway State Senator 201 Southeast Second Street Bryant, Arkansas 72022-4025
Dear Senator Broadway:
I am writing in response to your request for an opinion on whether an Arkansas city of the first class may lawfully adopt an ordinance and enter into a contract with a private company who seeks to recover police and fire department costs for responding to motor vehicle accidents from insurance companies.
Specifically, the materials enclosed with your request reflect that the company, presumably for a fee, would bill and attempt to collect from auto insurance companies the costs incurred by police and fire departments in responding to motor vehicle accidents. You have enclosed materials with your request, including a "sample ordinance," that would require the city's fire and police departments to "initiate user fees" for the delivery of fire and police department services, personnel, supplies and equipment to the scene of motor vehicle accidents and structure fires. The sample ordinance also provides that the user fees "shall be filed to the motor vehicle insurance, commercial or homeowner's insurance, representing an add-on-cost of the claim for damages of the vehicles, property and/or injuries" and that the "claim costs shall be filed to the insurance coverage of the owner of a vehicle, owner of property, or responsible party." The sample ordinance also provides that the amounts collected shall be placed into a fund to be used exclusively for personnel, supplies and equipment for the fire and police departments.
The materials enclosed with your request indicate that residents will not receive any bills, but that the costs will be billed directly to the insurance companies. The materials state that: "[t]his service is not listed in insurance policies, thus, considerable follow-up is required to collect payments" and that "after all efforts have been exhausted to collect from the insurance company, the account is submitted to the Police/Sheriff Department for further disposition."
Your question is whether "an Arkansas city of the first class [may] lawfully adopt an ordinance and enter into a contract of the type included in the enclosed packet."[1]
You also state that the city attorney has noted that A.C.A. § 27-53-301et seq. requires local police to investigate accidents within the city and specifies that the accident reports resulting from those investigations are public record for which only a designated fee can be charged. You also ask, therefore, whether the "proposal [can] be understood as charging a higher fee than that stated in the Code for providing accident reports to insurance companies, thus causing the program to conflict with the noted Code provisions."
RESPONSE
In my opinion a city of the first class is in all likelihood prohibited from passing the ordinance in question, because the "user fee" described in the sample ordinance may well be considered a "tax" rather than a "fee," which may not be imposed without an election of the people under A.C.A. § 26-73-103 or without specific statutory authority. Additional questions may arise as to a city's ability to impose "user fees" directly on insurance companies by ordinance where the insurance companies are not otherwise contractually obligated to pay such fees. Insurance is a heavily regulated industry in Arkansas and state law may be viewed as "covering the field," thus precluding any local municipal regulation or taxation in the area.
As an initial matter, I will address the city attorney's suggestion that the proposal might contravene state law by imposing a higher charge for accident reports than authorized by law. See e.g., A.C.A. § 27-53-210, as amended by Act 2158 of 2005 (effective August 12, 2005).[2] My reading of the company's proposal does not indicate that the "user fees" would be levied for copies of accident reports, but rather would be levied for the actual police or fire department efforts and equipment in responding to the accident. I will consequently not analyze any potential issue with regard to charging for accident reports.
Some initial clarification of the company's proposal is necessary prior to analyzing the legality of the sample ordinance. Although the sample ordinance describes the billed charges as "user fees," and provides for their "fil[ing]" directly with the insurance company of the owner of property, it must be recognized that the ordinance does not place any initial liability on the insured (the owner of the property or vehicle), to pay these fees. The fees are thus a direct charge against the insurance company. The insurance companies, as the company's promotional materials indicate, have not contracted to be liable for any such fees and the sample ordinance, because it places no liability for the fees on the owner of the property in question, does not purport to attach liability for these fees through the contractual relationship of the insurance company and its insured. The sample ordinance therefore must be analyzed as a direct municipal charge against insurance companies, rather than as some type of "claim" filed with them for coverage through an insurance contract.
The sample ordinance in question would therefore levy direct "user fees" on insurance companies commensurate with the costs incurred by the police or fire departments in responding to motor vehicle accidents. Although the sample ordinance you have enclosed designates the charges to be billed by the company as "user fees," the Arkansas Supreme Court has explained the characteristics which sometimes render such so-called "fees" taxes. The court has stated:
 "The distinction between a tax and a fee is that government imposes a tax for general revenue purposes, but a fee is imposed in the government's exercise of its police powers." City of Marion v. Baioni, 312 Ark. 423, 425, 850 S.W.2d 1, 2 (1993) (citing City of North Little Rock v. Graham, 278 Ark. 547, 647 S.W.2d 452 (1983)). A city may assess a fee for providing a service without obtaining public approval; however, a city cannot levy a tax unless it has received approval by the taxpayers. Barnhart v. City of Fayetteville, 321 Ark. 197, 900 S.W.2d 539 (1995) (citing Ark. Code Ann. § 26-73-103(a) (1987)). A governmental levy of a fee, in order not to be denominated a tax by the courts, must be fair and reasonable and bear a reasonable relationship to the benefits conferred on those receiving the services. Id.; Baioni, 312 Ark. 423, 850 S.W.2d 1. The fact that the ordinance labels the exaction a "fee," not a "tax," is not binding; rather, we look to the true character of the levy to determine whether it is a fee or a tax. Id.
Harris v. City of Little Rock, 344 Ark. 95, 40 S.W.3d 214 (2001) at 105.[3]
The Arkansas Supreme Court in City of Marion v. Baioni, 312 Ark. 423,850 S.W.2d 1 (1993), outlined some precedents illustrating the factual distinction between a fee and a tax. The court stated:
 An example of a fee charged in the exercise of the city's police power is found in Holman v. City of Dierks, 217 Ark. 677, 233 S.W.2d 392
(1950). There, the court held that an `annual sanitation charge' of $4.00 per business and residence which was to pay for fogging the city with insecticide three times a year was a fee, not a tax, for services to be rendered. On the other hand, the Graham court considered the validity of a North Little Rock ordinance which imposed a $3.00 per month `public safety fee' on the water bill of each household, business and apartment resident for the purpose of increasing the salaries of the city policemen and firemen and held such a fee was in actuality a tax because the so-called fee was for the cost of maintaining a traditional governmental function and services already in effect and not for a special service as was the case in the Holman case. 278 Ark. at 549, 647 S.W.2d at 453. As is illustrated by the Graham
decision, this court in determining whether a governmental charge, assessment or fee is a tax is not bound by how the enactment or levy labels it. See also City of Hot Springs v. Vapors, 298 Ark. 444, 769 S.W.2d 1 (1989); cf. Rainwater v. Haynes, 244 Ark. 1191, 428 S.W.2d 254 (1968).
City of Marion v. Baioni, 312 Ark. At 425. See also Barnhart v. City ofFayetteville, 321 Ark. 197, 900 S.W.2d 539 (1995), ($2.02 city sanitation charge used to wrap up sanitation authority's debt was a tax and not a fee because unrelated to the services provided).
The most relevant of the cases outlined above for our purposes is City ofNorth Little Rock v. Graham, 278 Ark. 547, 647 S.W.2d 452 (1983) involving the three-dollar "public safety fee" to increase the salary of policemen and firemen. The court stated:
 Here, it is undisputed that the people never voted on the $3.00 charge and that the charge is to pay for a salary increase for policemen and firemen. Therefore, it is a payment exacted by the municipality as a contribution toward the cost of maintaining the traditional governmental functions of police and fire protection. See Olustee Co-operative Association v. Oklahoma Wheat Utilization Research Market Development Comm., 391 P.2d 216 (Okla. 1964). It is not for a specific, special service such as the spraying for insects but is a means of raising revenue to pay additional money for services already in effect. Therefore, we conclude that this $3.00 charge is a tax and not a fee.
Id. at 549.
The "user fees" described in the sample ordinance you have enclosed purport to be levied for the specific service of responding to motor vehicle accidents. It should be noted, however, that response to motor vehicle accidents is a "traditional governmental function" of police and fire protection and is a service "already in effect," factors cited by the Graham court in concluding that the fee levied in that case was a tax.
In addition, the introductory language of the sample ordinance bears out the conclusion that the "user fees" levied by the ordinance are simply an alternative means for funding traditional governmental services where a more general tax would otherwise be levied. The sample ordinance states that:
 WHEREAS, Emergency Fire and Police Department service run activity to vehicular accidents and structure fires continues to increase each year; new Home Security regulations, such as biological training and equipment, etc., will create increased demands on all operational areas of the Fire and Police Department's services; and,
 WHEREAS, the Fire Department and Police Department have investigated different methods to maintain a high level of quality of Fire and Police emergency services throughout times of constantly increasing service demands, where maintaining an effective response by the Fire and Police Departments decreases the insurance companies costs by saving lives and minimizing vehicular damage by fire; and,
 WHEREAS, raising the real property tax to meet the increase in service demands would not be fair to property owners, when a majority of the Motor Vehicle Accidents (MVA) involve individuals not owning property or paying property taxes in the jurisdiction of the Fire and Police Departments; and the ability of the Fire and Police Departments to effectively respond decreases the liability of the insurance companies by saving lives and minimizing vehicular structure damage by fire; and,
 WHEREAS, the City Council desires to implement a fair and equitable procedure by which to collect said fees from insurance companies and non-taxpayers and shall establish a billing system in accordance with State and Federal laws, regulations and guidelines; Now, Therefore. . . .
In my opinion, therefore, the "user fees" levied by the sample ordinance, even though imposed only on insurance companies on a "per accident" basis, might well be determined by a court to be "taxes," on the insurance companies, which may not be levied without authorization of the city's electors or specific statutory authority.
Even with an affirmative vote of the people under A.C.A. § 26-73-103(a) (see footnote 3, supra), a city's authority to impose the charges described by the sample ordinance would in my opinion be doubtful.
Again, at issue is the authority of a city of the first class to levy direct "user fees," which might be deemed "taxes" against insurance companies to compensate for the cost of responding to motor vehicle accidents.
As I recently stated in Op. Att'y. Gen. 2005-018:
 Municipal corporations of the first class are "authorized to perform any function and exercise full legislative power in any and all matters of whatsoever nature pertaining to [their] municipal affairs including, but not limited to, the power to tax." A.C.A. § 14-43-602
(Repl. 1998). Despite this grant of authority, it is clear that municipal corporations in Arkansas cannot pass any laws contrary to the general laws of the State. See Arkansas Const. Art. 12, §§ 3 and 4; and Nahlen v. Woods, 255 Ark. 974, 504 S.W.2d 749 (1974). In addition, despite the seemingly broad grant of authority in A.C.A. § 14-43-602
(adopted in 1971), the Arkansas Supreme Court has continued to hold that a city possesses only those powers that are expressly granted by the Constitution or the General Assembly, necessarily incident to the execution of those granted powers, or powers that are indispensable, and not merely convenient, to their objects and purposes. Cosgrove v. City of West Memphis, 327 Ark. 324, 326, 938 S.W.2d 827 (1997); see also Op. Att'y Gen. 2004-046. In addition, substantial doubt as to the existence of a power in a municipal corporation must be resolved against it. Cosgrove, supra (citing City of Little Rock v. Cash, 277 Ark. 494, 501, 644 S.W.2d 229 (1982)).
Id. at 6.[4]
I also indicated in Op. Att'y. Gen. 2005-018 that where the General Assembly has pervasively regulated a particular field, local legislation on the topic may not be a "municipal affair" and may be preempted as contrary to state law. Id. at 5, relying on Kollmeyer v. Greer,267 Ark. 632, 593 S.W.2d 29 (1980). See also, City of Piggott v. Eblen,236 Ark. 390, 395, 366 Ark. 192 (1963) ("[w]hen we apply . . . the long recognized rule governing municipal powers . . . we must agree with the trial court that the ordinance in question is in conflict with our state statutes on this same subject. The statutes of our state, being paramount and supreme, have pre-empted the appellant in this field of legislation and, therefore, render the ordinance a nullity").
Insurance is a pervasively regulated industry in Arkansas. See e.g.,
A.C.A. §§ 23-60-101 to 23-103-316. I have found at least two statutes indicating that local regulation of insurance companies, specifically in the area of imposing taxation on such companies, is preempted. For example, the Arkansas Code at A.C.A. §§ 26-57-601 to -616 imposes a "premium tax" on insurance companies and states in § 26-57-602 that:
 The taxes levied by §§ 26-57-603, 26-57-604, and 26-57-605 upon any insurer shall be in lieu of all other state, county, city, town, or municipal taxes on premium receipts. No county, city, town, or municipality shall impose any privilege tax or license fee upon any such insurer or its agents for the privilege of transacting the business of insurance.
In addition, Section 23-63-1614 of the Arkansas Code (Supp. 2003), regarding "captive" insurance companies, also authorizes a "premium tax" to be levied on those companies, but provides in subsection (h)(1) and (2) that: "[t]he tax under this section constitutes all taxes collectible under the laws of this state from a captive insurance company. No other tax may be levied or collected from a captive insurance company by this state or a county, city, or municipality of this state. . . ."
Again, the sample ordinance you have enclosed does not characterize the "user fees" as taxes, or taxes on premiums, or as taxes levied on the "privilege of transacting the business of insurance." In my opinion, however, because the "user fees" are levied to support a traditional governmental service already provided by the municipality they may well be considered "taxes" under the case law discussed above. As a consequence, the state statutes levying "premium taxes" on insurance companies and indicating their exclusivity, in my opinion preclude the imposition of local "users fees" or "taxes" on insurance companies in the manner suggested in the materials you have enclosed.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB: ECW/cyh
[1] I must note that you have not enclosed any proposed contract to be entered into between the company and the city. Only promotional materials and the sample ordinance have been enclosed.
[2] As to the effective date, see Op. Att'y. Gen. 2005-110.
[3] The statutory subsection mentioned in the excerpt above, A.C.A. §26-73-103(e), provides as follows:
 (a) In addition to all other authority of local governments to levy taxes provided by law, any county, acting through its quorum court, or any municipality, acting through its governing body, may levy any tax not otherwise prohibited by law. However, no ordinance levying an income tax authorized by this subchapter or any other tax not authorized shall be valid until adopted at a special or general election by the qualified electors of the city or in the area of the county where the tax is to be imposed, as the case may be.
(Emphasis added.)
[4] The statute cited in this quotation, A.C.A. § 14-43-602 provides that "[a]ny city of the first class is authorized to perform any function and exercise full legislative power in any and all matters or whatsoever nature pertaining to its municipal affairs including, but not limited to, the power to tax." In addition, however, A.C.A. § 14-43-601 lists a number of topics excluded from the concept of "municipal affairs," and reserves them as "state affairs," including "[m]atters coming within the police power of the state including minimum public health, pollution, and safety standards." A.C.A. § 14-43-601(a)(1)(J).