The Honorable David Bisbee State Senator 14068 Pyramid Drive Rogers, AR 72758-0116
Dear Senator Bisbee:
I am writing in response to your request for an opinion concerning A.C.A. § 14-56-103 (Supp. 2005), which authorizes the assessment of "development impact fees." Your question pertains to the definition of the term "development impact fee" under subsection 14-56-103(a)(3), and specifically, the exclusion of "utility hookup fees or access fees" from that definition. See A.C.A. § 14-56-103(a)(3)(B)(iii). As backdrop to your question, you state:
 It is my understanding in at least one locality there is a practice of charging an "access fee" for the physical connection of water and sewer lines, and of charging a "utility hookup fee" that is used to generate revenues and is not related to services. It appears to me that this second charge is exactly what the legislation [A.C.A. § 14-56-103(a)(3)(B)(iii)] intended to regulate.
You then ask:
 Does the phrase "utility hookup fees or access fees" allow a municipality or municipal service agency to charge two separate fees, one for making the physical connection and one to generate revenues?
 RESPONSE
In my opinion, A.C.A. § 14-56-103(a)(3)(B)(iii) does not purport to regulate, prohibit, or otherwise specifically address the matter of permissible water and sewer fees. Rather, by removing "utility hookup fees or access fees" from the definition of a "development impact fee," this subsection in my opinion simply serves to clarify that the various procedures established under section 14-56-103 with respect to impact fees do not apply to these utility fees. The question of whether a particular "hookup fee" is properly charged is a separate matter that may depend upon the usual distinction between a "fee" and a "tax," as discussed further below.
As you note in your letter requesting an opinion in this matter, the term "development impact fee" is defined under A.C.A. § 14-56-103 as:
 . . . a fee or charge imposed by a municipality or by a municipal service agency upon or against a development in order to generate revenue for funding or for recouping expenditures of the municipality or municipal service agency that are reasonably attributable to the use and occupancy of the development.
Id. at (a)(3)(A).[1]
Your specific question pertains to subsection (a)(3)(B) of section14-56-103, which excludes certain fees and charges from the definition of "development impact fee." This subsection provides as follows:
"Development impact fee" shall not include:
 (i) Any ad valorem real property taxes;
 (ii) Any special assessments for an improvement district;
 (iii) Any utility hookup fees or access fees; or
 (iv) Any fees for filing development plats or plans for building permits or for construction permits assessed by a municipality or a municipal service that are approximately equal to the cost of the plat, plan, or permit review process to the municipality or the municipal service agency[.]
A.C.A. § 14-56-103(a)(3)(B) (Supp. 2005) (emphasis added).
It may be helpful in addressing your question concerning these exclusions to discuss the purpose of "development impact fees" and the related procedural requirements. These fees may be assessed, collected, and expended only under a "development impact fee ordinance" that contains, inter alia, a statement of the public facilities and capital improvements that are to be financed by the fees (id. at (e)(3)(A)), and only after the municipality or municipal service agency has adopted a "capital plan and level of service standards for all of the public facilities that are to be so financed." Id. at (e)(1) and (2). A "capital plan" means "a description of new public facilities or of new capital improvements to existing public facilities or of previous capital improvements to public facilities that continue to provide capacity available for new development that includes cost estimates and capacity available to serve new development." Id. at (a)(1). Funds collected under the ordinance are deposited into a special interest-bearing account and no other revenues may be placed in this account. Id. at (g)(1) and (3).
The legislature's intent in enacting the exclusions under A.C.A. § 14-56-103(a)(3)(B) becomes clear, in my opinion, when the exclusions are considered in light of these requirements and the overall purpose of impact fees. Fees of this nature are a relatively new funding technique for local government to meet the service needs of growing communities.See Blaesser Kentopp, Impact Fees: The Second Generation, 38 Wash.U.J.Urb. Contemp.L. 55 (1990). Impact fees have been distinguished from taxes or special assessments on the basis that they are compensation for the use of another's property or improvement and they measure the cost of the demand or need for public facilities as a result of new development. Id. at 65-67. The exclusions under subsection (a)(3)(B)(i) and (ii) make explicit this distinction. By also excluding utility hookup and access fees, and fees relating to development plats or building or construction permits, subsection 14-56-103(a)(3)B) in my opinion simply makes it clear that, as with taxes and special assessments, these latter fees are not encompassed within the statutory scheme pertaining to "development impact fees." Accordingly, I do not interpret this statute to prohibit or otherwise comment upon the propriety or impropriety of particular utility fees.
It should perhaps also be noted as a general matter that state law does not address the issue of water and sewer fees, other than to grant cities the authority to establish fees for the use of municipal water and sewer systems. See A.C.A. §§ 14-234-214; 14-235-223. In other words, state law does not differentiate among the types of fees that municipalities may charge for the use of water and sewer systems. I will also note, however, regarding your statement that a hookup fee is being "used to generate revenues and is not related to services," that this suggests the possibility that the "fee" is actually a "tax." The Arkansas Supreme Court has explained the characteristics which sometimes render "fees" taxes. The court has stated:
 "The distinction between a tax and a fee is that government imposes a tax for general revenue purposes, but a fee is imposed in the government's exercise of its police powers." City of Marion v. Baioni, 312 Ark. 423, 425, 850 S.W.2d 1, 2 (1993) (citing City of North Little Rock v. Graham, 278 Ark. 547, 647 S.W.2d 452
(1983)). A city may assess a fee for providing a service without obtaining public approval; however, a city cannot levy a tax unless it has received approval by the taxpayers. Barnhart v. City of Fayetteville, 321 Ark. 197, 900 S.W.2d 539 (1995) (citing Ark. Code Ann. § 26-73-103(a) (1987)). A governmental levy of a fee, in order not to be denominated a tax by the courts, must be fair and reasonable and bear a reasonable relationship to the benefits conferred on those receiving the services. Id.; Baioni, 312 Ark. 423, 850 S.W.2d 1.
Harris v. City of Little Rock, 344 Ark. 95, 105, 40 S.W.3d 214 (2001).See also Holman v. City of Dierks, 217 Ark. 677, 233 S.W.2d 392 (1950).
The Arkansas Supreme Court in City of Marion v. Baioni, 312 Ark. 423,850 S.W.2d 1 (1993), outlined some precedents illustrating the factual distinction between a fee and a tax. The court stated:
 An example of a fee charged in the exercise of the city's police power is found in Holman v. City of Dierks, 217 Ark. 677, 233 S.W.2d 392
(1950). There, the court held that an `annual sanitation charge' of $4.00 per business and residence which was to pay for fogging the city with insecticide three times a year was a fee, not a tax, for services to be rendered. On the other hand, the Graham court considered the validity of a North Little Rock ordinance which imposed a $3.00 per month `public safety fee' on the water bill of each household, business and apartment resident for the purpose of increasing the salaries of the city policemen and firemen and held such a fee was in actuality a tax because the so-called fee was for the cost of maintaining a traditional governmental function and services already in effect and not for a special service as was the case in the Holman case. 278 Ark. at 549, 647 S.W.2d at 453. As is illustrated by the Graham decision, this court in determining whether a governmental charge, assessment or fee is a tax is not bound by how the enactment or levy labels it. See also City of Hot Springs v. Vapors, 298 Ark. 444, 769 S.W.2d 1 (1989); cf. Rainwater v. Haynes, 244 Ark. 1191, 428 S.W.2d 254 (1968).
City of Marion v. Baioni, 312 Ark. at 425. See also Barnhart v. City ofFayetteville, 321 Ark. 197, 900 S.W.2d 539 (1995) ($2.02 city sanitation charge used to wrap up sanitation authority's debt was a tax and not a fee because unrelated to the services provided).
I am unable to opine regarding how, if at all, these general propositions of law might bear upon the particular circumstances that prompted your question. Only a court acquainted with all of the pertinent facts could determine whether the true character of a certain levy is a tax.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL
Attorney General
[1] A "municipal service agency" is defined as: "(A) Any department, commission, utility, or agency of a municipality, including any municipally owned or controlled corporation; (B) Any municipal improvement district, consolidated public or municipal utility system improvement district, or municipally owned nonprofit corporation that owns or operates any utility service; (C) Any municipal water department, waterworks or joint waterworks, or a consolidated waterworks system operating under the Consolidated Waterworks Authorization Act, § 25-20-301 et seq.; (D) Any municipal wastewater utility or department; (E) Any municipal public facilities board; or (F) Any of these municipal entities operating with another similar entity under an interlocal agreement in accordance with § 25-20-101 et seq. or § 25-20-201 et seq.[.]" A.C.A. § 14-56-103(a)(5) (Supp. 2005).